**MAYER BROWN LLP**
JOHN NADOLENCO (SBN 181128)
*jnadolenco@mayerbrown.com*
EUGENE VOLOKH (SBN 194464)
*evolokh@mayerbrown.com*
350 South Grand Avenue, 25th Floor
Los Angeles, California 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

A. JOHN P. MANCINI (admitted *pro hac vice*)
*jmancini@mayerbrown.com*
ALLISON LEVINE STILLMAN*
*astillman@mayerbrown.com*
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2295
Facsimile: (212) 849-5895

ARCHIS A. PARASHARAMI*
*aparasharami@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3328
Facsimile: (202) 263-5328

*Pro hac vice application to be filed*

Attorneys for Defendant SPOTIFY USA INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LOWERY, individually and on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SPOTIFY USA INC., a Delaware corporation,<br><br>Defendant. | Case No. 2:15-cv-09929-BRO-RAO<br><br>**DEFENDANT SPOTIFY USA INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK**<br><br>Date: April 4, 2016<br>Time: 1:30 p.m.<br>Judge: Hon. Beverly Reid O'Connell |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................ 1

II.    THIS COURT LACKS PERSONAL JURISDICTION OVER
       SPOTIFY IN THIS MATTER ................................................................... 2

       A.     Spotify Is Not Subject To General Jurisdiction In California ............ 2

       B.     Spotify Is Not Subject To Specific Jurisdiction In California In
              This Case ........................................................................................... 3

              1.     Under Walden, Spotify Has Not Directed Its Activities
                     Towards California Simply By Making Its Internet-Based
                     Services Available Around The World .................................... 5

              2.     The Only Relevant Contacts Would Be Those Created
                     By Spotify–Not Those Generated By California Users'
                     Interactions With The Spotify Service .................................... 9

              3.     The Only Contacts That Spotify Itself Has Created With
                     The Forum Are Not Suit-Related ......................................... 10

III.   IN THE ALTERNATIVE, THE CASE SHOULD BE
       TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW
       YORK ...................................................................................................... 11

       A.     Virtually All The Factors Courts Consider In Deciding Whether
              Venue Is Inconvenient Point Toward Transferring This Case to
              the Southern District of New York ................................................. 11

              1.     The Southern District Of New York Is A Far More
                     Convenient Forum For Both Parties ...................................... 12

              2.     The Southern District of New York Is A More
                     Convenient Forum For Witnesses ......................................... 14

              3.     Plaintiff's Choice Of Forum Is Entitled To No Deference
                     Here ..................................................................................... 17

              4.     The Southern District of New York Has An Interest In
                     And Ability To Adjudicate This Matter ................................ 19

       B.     The Court May Grant a Transfer Without Deciding the
              Question of Personal Jurisdiction ................................................... 19

IV.    CONCLUSION ....................................................................................... 20

i

SPOTIFY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE.
CASE NO. 2:15-CV-09929-BRO-RAO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams Shell v. Shell Oil Co.*,
  165 F. Supp. 2d 1096 (C.D. Cal. 2001)................................................................19

*Adobe Sys. Inc. v. Cardinal Camera & Video Ctr., Inc.*,
  2015 WL 5834135 (N.D. Cal. Oct. 7, 2015)...........................................................6

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
  751 F.3d 796 (7th Cir. 2014).........................................................................7, 8, 9

*Atl. Marine Constr. Co. v. U.S. Dist. Court for Western Dist. of Tex.*,
  134 S. Ct. 568 (2013) ...........................................................................11, 17, 18

*Braun v. Crown Crafts Infant Prods., Inc.*,
  2013 WL 1154498 (W.D. Wash. Mar. 20, 2013)...................................................10

*Broad. Data Retrieval Corp. v. Sirius Satellite Radio, Inc.*,
  2006 WL 1582091 (C.D. Cal. June 6, 2006)........................................................17

*Bubble Genius LLC v. Smith*,
  2015 WL 4399483 (C.D. Cal. July 17, 2015) .........................................................6

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ...............................................................................................4

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014) ..................................................................................1, 2, 3

*ESPN, Inc. v. Quiksilver, Inc.*,
  581 F. Supp. 2d 542 (S.D.N.Y. 2008)..................................................................18

*Fabus Corp. v. Asiana Express Corp.*,
  2001 WL 253185 (N.D. Cal. Mar. 5, 2001).........................................................17

*Galliani v. Citimortgage, Inc.*,
  2013 WL 101411 (E.D. Cal. Jan. 7, 2013)...........................................................14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  131 S. Ct. 2846 (2011) ...........................................................................................2

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
   199 F.3d 1343 (D.C. Cir. 2000) ........................................................... 8

*Gullen v. Facebook, Inc.*,
   2016 WL 245910 (N.D. Ill. Jan. 21, 2016) ................................... 5, 6, 9

*Halvorson v. Solaroad Technologies Group, LLC*,
   2011 WL 1837748 (W.D. Wash. May 12, 2011) .............................. 19

*Hamilton v. Genesis Logistics, Inc.*,
   2013 WL 3168373 (C.D. Cal. June 20, 2013).................................... 14

*Hoefer v. U.S. Dep't of Commerce*,
   2000 WL 890862 (N.D. Cal. June 28, 2000) ...................................... 18

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000)............................................................... 11

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984) ............................................................................. 3

*Leyvas v. Bezy*,
   2008 WL 2026276 (D. Ariz. May 9, 2008)........................................ 16

*Lightfoot v. Cendant Mortg. Corp.*,
   769 F.3d 681 (9th Cir. 2014)............................................................ 2, 3

*Lou v. Belzberg*,
   834 F.2d 730 (9th Cir. 1987).............................................................. 18

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
   647 F.3d 1218 (9th Cir. 2011)............................................................... 2

*McGibney v. Retzlaff*,
   2015 WL 3807671 (N.D. Cal. June 18, 2015) ..................................... 7

*Metz v. U.S. Life Ins. Co.*,
   674 F. Supp. 2d 1141 (C.D. Cal. 2009)............................................... 17

*Painter's Dist.Council No. 30 Health & Welfare Fund v. Amgen, Inc.*,
   2007 WL 4144892 (C.D. Cal. Nov. 13, 2007)............................... 17, 18

*Perkins v. Benguet Consol. Mining Co.*,
   342 U.S. 437 (1952) .............................................................................. 3

iii

*Picot v. Weston*,
 780 F.3d 1206 (9th Cir. 2015)..............................................................7

*Ranza v. Nike, Inc.*,
 793 F.3d 1059 (9th Cir. 2015)..............................................................2

*Ravelo Monegro v. Rosa*,
 211 F.3d 509 (9th Cir. 2000)..............................................................17

*Ret. Sys. of Miss. v. Stanley*,
 605 F. Supp. 2d 1073 (C.D. Cal. 2009)...............................................19

*Saleh v. Titan Corp.*,
 361 F. Supp. 2d 1152 (S.D. Cal. 2005) .........................................16, 17

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
 549 U.S. 422 (2007) ............................................................................19

*Stewart Org., Inc. v. Ricoh Corp.*,
 487 U.S. 22 (1988) ..............................................................................11

*Turner v. Harrah's New Orleans Hotel & Casino*,
 2011 WL 1666925 (C.D. Cal. Apr. 7, 2011).......................................19

*U.S. v. One Oil Painting Entitled Femme*
 *en Blanc by Pablo Picasso*, 362 F. Supp. 2d 1175 (C.D. Cal. 2005)...............16

*W. Digital Techs., Inc. v. Bd. of Regents of Univ. of Texas Sys.*,
 2011 WL 97785 (N.D. Cal. Jan. 12, 2011) .........................................19

*Walden v. Fiore*,
 134 S. Ct. 1115 (2014) .................................................................*passim*

*Whiteman v. Grand Wailea Resort*,
 1999 WL 163044 (N.D. Cal. Mar. 17, 1999).......................................19

*Williams v. Bowman*,
 157 F. Supp. 2d 1103 (N.D. Cal. 2001) ..............................................17

*World-Wide Volkswagen Corp. v. Woodson*,
 444 U.S. 286 (1980) ..............................................................................4

*In re Yahoo! Inc.*,
 2008 WL 707405 (C.D. Cal. Mar. 10, 2008) .........................12, 14, 15

*Yung v. Institutional Trading Co.*,
   2008 WL 1734743 (N.D. Cal. Apr. 14, 2008) ................................................... 19

**Statutes**

28 U.S.C. § 1404 ................................................................................................. *passim*

29 U.S.C. §1391 .......................................................................................................... 11

Cal. Civ. Proc. Code § 410.10 ................................................................................... 2

**Rules**

Fed. R. Civ. P. 12 ...................................................................................................... 20

SPOTIFY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE.
CASE NO. 2:15-CV-09929-BRO-RAO

## I.    INTRODUCTION

This case—a putative nationwide copyright class action brought by a resident of Georgia against Spotify USA Inc. ("Spotify"), a New York-headquartered company—does not belong in this Court for two reasons.  First, the Court lacks personal jurisdiction over Spotify.  As the Supreme Court's decision in *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014), makes clear, Spotify is not subject to general personal jurisdiction here because—as a Delaware corporation headquartered in New York—it is not "at home" in California.  Nor is it subject to specific personal jurisdiction:  Spotify has not itself created the minimum, suit-related contacts directed at California that the Due Process Clause requires to authorize specific jurisdiction.  This lawsuit should therefore be dismissed under Federal Rule of Civil Procedure 12(b)(2).

Second, even if this Court did have personal jurisdiction over Spotify, the case should be transferred to the Southern District of New York under 28 U.S.C. § 1404.  The reason is simple:  Venue in California is not convenient for either of the parties or any of the potential witnesses, including potential key third-party witnesses.  Spotify's headquarters and all of its employees relevant to this litigation are located in New York.  Plaintiff Lowery is a Georgia resident who has not alleged any ties to California.  In addition, one of the most important third-party witnesses to this action, namely, the Harry Fox Agency, is located in New York.  Finally, no party documents relevant to this litigation are located in this District.  Thus, "for the convenience of parties and witnesses," and "in the interest of justice" (28 U.S.C. § 1404), this case should be transferred to the Southern District of New York.  In fact, if this Court were to transfer this action to New York, it could avoid the need to rule on the constitutional questions presented by the issue of personal jurisdiction, because a court may grant a transfer motion without deciding whether personal jurisdiction exists.

## II.   THIS COURT LACKS PERSONAL JURISDICTION OVER SPOTIFY IN THIS MATTER.

"In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (internal quotation marks omitted).  As this Court is aware, there are two forms of personal jurisdiction: (a) "general jurisdiction," which applies where a defendant is so "at home" in the forum that a court may adjudicate any claims against the defendant arising from anywhere in the world; and (b) "specific jurisdiction," which allows a court to adjudicate claims that arise out of the defendant's suit-related contacts with the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).

Neither form of personal jurisdiction over Spotify is proper in this case.  As a Delaware corporation with its principal place of business in New York, Spotify is not subject to general jurisdiction in this State.  And this litigation does not arise out of suit-related contacts that Spotify has directed towards California in particular, as is required for specific jurisdiction.  Thus, the Due Process Clause does not authorize personal jurisdiction over Spotify here.[1]

### A.   Spotify Is Not Subject To General Jurisdiction In California.

The Supreme Court's 2014 decision in *Daimler* sharply limits the range of jurisdictions in which a corporate defendant may be considered "'essentially at home'" and therefore subject to general jurisdiction. *Lightfoot v. Cendant Mortg. Corp.*, 769 F.3d 681, 689 (9th Cir. 2014) (quoting *Daimler*, 134 S. Ct. at 755-58). As the Ninth Circuit recently explained, *Daimler* holds that "[t]he two places where a corporation is 'essentially at home' and therefore subject to general

---

[1] "Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits.  California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citations omitted).

1  jurisdiction are its **place of incorporation** and its **principal place of business**." *Id.*

2  (citing *Daimler*, 134 S. Ct. at 760) (emphasis added).   A corporation can be

3  considered at home elsewhere only in a truly "exceptional case," such as when its

4  *de facto* principal place of business and its formal headquarters are temporarily in

5  different locations. *Daimler*, 134 S. Ct. at 755–58 & n.8 (citing *Perkins v. Benguet*

6  *Consol. Mining Co.*, 342 U.S. 437 (1952)).[2]

7          Those "exceptional" conditions do not apply here, and *Daimler* therefore

8  conclusively demonstrates that Spotify is not subject to general jurisdiction in

9  California.   As Plaintiff concedes in his complaint, Spotify is incorporated in

10  Delaware and its principal place of business is in New York.  Compl. ¶ 8; *see also*

11  Declaration of Sachin Doshi ¶ 8.   That ends the inquiry under *Daimler*:  Because

12  Spotify is not "at home" in California, it is not subject to general jurisdiction here.

13  Spotify is subject to general jurisdiction only in Delaware or New York.

14      **B.    Spotify Is Not Subject To Specific Jurisdiction In California In**
        **This Case.**

15          Spotify is likewise not subject to specific personal jurisdiction in California

16  in this case.  In *Walden v. Fiore*, 134 S. Ct. 1115 (2014), the Supreme Court

17  reaffirmed the traditional rule that, for specific jurisdiction to exist, "the

18  defendant's suit-related conduct must create a substantial connection with the

19  forum State." *Id.* at 1121.  Under this rule, three requirements must be satisfied

20  before a court may exercise specific jurisdiction consistent with due process.

21          *First*, the defendant must have established "contacts with the *forum State*

22  *itself*, not . . . contacts with persons who reside there."   *Id.* at 1122 (emphasis

23

24  _____

25  [2]    *Perkins* is the only case in which the Supreme Court has found general
    personal jurisdiction over a non-resident defendant. There, a Philippine corporation

26  was temporarily relocated to Ohio while the Japanese occupied the Philippines
    during World War II.   342 U.S. at 447.   During that time, "Ohio was the

27  corporation's principal, if temporary, place of business." *Keeton v. Hustler*
    *Magazine, Inc.*, 465 U.S. 770, 779 n. 11 (1984) (describing facts of *Perkins*).

28

3

1   added).  Thus, "a defendant's relationship with a plaintiff or third party, standing

2   alone, is an insufficient basis for jurisdiction." *Id.* at 1123.  Further, contacts with

3   individual forum *residents* are irrelevant except to the extent that they demonstrate

4   that the defendant has targeted and directed its activities at the *forum state as such*.

5   *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) (explaining

6   that a defendant's "contract with an out-of-state [plaintiff]" does not

7   "automatically establish sufficient minimum contacts in the [plaintiff's] home

8   forum" and that courts must instead evaluate "whether the defendant purposefully

9   established minimum contacts *within the forum*") (emphasis added).

10      *Second*, the contacts between the defendant and the forum state must be

11   "contacts that the 'defendant *himself*' creates."  *Walden*, 134 S. Ct. at 1122

12   (quoting *Burger King*, 471 U.S. at 475).  This is so because the "[d]ue process

13   limits on the State's adjudicative authority principally protect the liberty of the

14   nonresident defendant—not the convenience of plaintiffs or third parties." *Id.*

15   (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)).

16   Thus, "it is the *defendant's conduct* that must form the necessary connection with

17   the forum State that is the basis for its jurisdiction over him." *Id.* (emphasis added)

18   (citing *Burger King*, 471 U.S. at 478).  Specific jurisdiction may not be based on

19   the "'unilateral activity'" of persons other than the defendant.  *See id.* at 1123

20   (quoting *Burger King*, 471 U.S. at 475).

21      *Third*, the contacts upon which specific jurisdiction is based must be "suit-

22   related."  *Walden*, 134 S. Ct. at 1121.  Contacts that have nothing to do with the

23   "underlying controversy" in the litigation are irrelevant to specific jurisdiction. *Id.*

24   at 1121 n.6 (quotation marks omitted).

25      In this case, none of the three due process requirements underscored in

26   *Walden* is met.

27

28

1.    **Under *Walden*, Spotify Has Not Directed Its Activities Towards California Simply By Making Its Internet-Based Services Available Around The World.**

Lowery does not allege that Spotify has directed any of its activities *specifically toward California* as opposed to other jurisdictions. He does not, because he cannot. The Spotify activities at issue in this lawsuit—Spotify's licensing of musical compositions in the United States—are activities that are exclusively performed by Spotify employees in New York City or Spotify AB employees in Sweden,[3] and/or by Spotify's exclusive third party licensing agent for mechanical rights in the United States, namely, the Harry Fox Agency, which also performs all of its relevant activities in New York City. *See* Doshi Decl. ¶ 14. These activities have nothing to do with California.

Plaintiff tries to overcome this obstacle by pointing to Spotify's alleged activities with respect to its users, alleging that "residents of California" enter into user agreements and engage in online transactions with Spotify, such as playing musical works through the service. Compl. ¶ 8. He also alleges that the Spotify service interacts with "computers of residents in California" in its operations. *Id.*

But the fact that Spotify's online service is accessible in California and used by certain California *residents* does not indicate that Spotify has purposefully directed its activities *toward California in particular*. Indeed, a federal district court recently reached the same conclusion in a highly analogous case, *Gullen v. Facebook, Inc.*, 2016 WL 245910 (N.D. Ill. Jan. 21, 2016). There, a plaintiff sued Facebook in a putative class action, alleging that Facebook's "tag suggestion" feature violated Illinois law. *Id.* at *1. The plaintiff argued that Facebook was subject to specific jurisdiction in Illinois because it had supposedly "target[ed]" the feature at "millions of users who are residents of Illinois." *Id.* at *2. But the court

---

[3]    Spotify USA Inc. is a wholly-owned subsidiary of Spotify AB, a company organized under the laws of Sweden. Doshi Decl. ¶ 7. Spotify AB is not a party to this litigation.

1   disagreed, concluding that that assertion was simply "not true" because the feature

2   was available to *all* Facebook users, not merely those in Illinois. *Id.*

3       The same analysis applies here:  Spotify's service is not directed at

4   California in particular simply because it "is accessible to [California] residents."

5   *See id.*  As with the Facebook feature at issue in *Gullen*, Spotify's content is

6   available to users throughout the United States (and the world).  Millions of people

7   around the world use Spotify's service—Spotify has at least 75 million active users

8   in 58 countries[4]—and the catalog of content available to users in California is the

9   same as that available to users anywhere else in the country (*see* Doshi Decl. ¶ 13),

10  demonstrating that Spotify does not target its service at California residents in

11  particular.  The fact that California residents use Spotify simply reflects that certain

12  "purchasers happen[] to live in" California; it does not indicate that Spotify

13  expressly aimed its activities at California. *Adobe Sys. Inc. v. Cardinal Camera &*

14  *Video Ctr., Inc.*, 2015 WL 5834135, at *5 (N.D. Cal. Oct. 7, 2015); *see also*;

15  *Bubble Genius LLC v. Smith*, 2015 WL 4399483, at *5 (C.D. Cal. July 17, 2015)

16  (holding that website did not target California even though California residents

17  made purchases on it, because its operator did not "deliberately create substantial

18  contacts with California" or intend the site to be "particularly desirable in the

19  California market").

20      Spotify's service is not geographically "tethered to [California] in any

21  meaningful way." *Walden*, 134 S. Ct. at 1125.  Spotify is a digital music streaming

22  service that allows users to stream music (and other related media) over the

23  Internet to a wide range of devices, including personal computers, tablets,

24  _____

25  [4]    *See* Stillman Decl. Exs. A-B (Business Insider, Spotify Now Has 20 Million
Paying Subscribers, available at http://www.businessinsider.com/spotify-now-has-

26  20-million-paid-subscribers-75-million-users-charm-2015-6?r=UK&IR=T;  The
New York Times, Starbucks in Deal with Spotify to Stream Music, available at

27  http://www.nytimes.com/2015/05/19/business/media/starbucks-in-deal-with-
spotify-to-stream-music.html?_r=0).

28

smartphones, cars, TVs, speakers, gaming consoles, and more.  Doshi Decl. ¶ 10. In order to play music using the Spotify service, users must first log on to the Spotify service through the Spotify software or website on their devices.  Doshi Decl. ¶ 13.  The Spotify service is completely portable: a Spotify user who created an account in California (for example) can stream music to her device in another state (or sometimes another country).  Doshi Decl. ¶ 13.  This portability further confirms that Spotify has not directed its actions specifically at California.  *See Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015) (holding that specific jurisdiction was unavailable because the defendant's actions were not directed at California but instead would "follow [the plaintiff] wherever he might choose to live or travel").

Courts have made similar points with respect to email, another portable Internet service, explaining that email contacts "do[] not show a relation between the [defendant] and [the forum]."  *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014).  This is so because "[a]s a practical matter, email does not exist in any location at all; it bounces from one server to another . . . and it winds up wherever the recipient happens to be at that instant."  *McGibney v. Retzlaff*, 2015 WL 3807671, at *5 (N.D. Cal. June 18, 2015) (quotation marks omitted).  Because a user can access email from anywhere, the relationship between where she happens to do so at any particular time and a lawsuit is "entirely fortuitous," meaning that an email contact does not show any connection between the defendant and the place where the contact happened to occur.  *Id.* (quotation marks omitted).

The same is true of the Spotify service.  Users can and do access Spotify from nearly anywhere, and it is (as in *McGibney*) "entirely fortuitous" where a user happens to be when she streams a particular song.  *Id.*  Thus, any contacts between Spotify and users who *happen* to be in California do not support specific

7

jurisdiction, because they involve no "deliberate actions by [Spotify] to target or direct itself toward the forum state." *Advanced Tactical*, 751 F.3d at 803.

At bottom, Plaintiff's theory of jurisdiction cannot be that Spotify has targeted its service *at California*—it clearly has not—but instead that Spotify is subject to specific jurisdiction *anywhere and everywhere* its service can be accessed. Yet that theory would lead to the absurd conclusion that any website or online service would be subject to suit in virtually every jurisdiction. As the Seventh Circuit has put it: "[I]f having an interactive website were enough [to warrant specific jurisdiction], there is no limiting principle—a plaintiff could sue everywhere. Such a result would violate the principles on which *Walden* and *Daimler* rest." *Id.* at 803; *see also, e.g., GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000) (rejecting the notion that "mere accessibility" of an internet service in the forum suffices for personal jurisdiction, because that "expansive theory of personal jurisdiction would shred the[] constitutional assurance[] [of due process] out of practical existence"). Thus, this Court should hold that Spotify's contacts with users do not support specific jurisdiction because they are not in any way directed at California in particular.

> **2.    The Only Relevant Contacts Would Be Those Created *By Spotify*–Not Those Generated By California Users' Interactions With The Spotify Service.**

Plaintiff's argument for specific jurisdiction based on Spotify's interactions with California-based users fails for a second reason: Spotify does not *itself* create those contacts. In essence, Spotify simply makes available an online service that transmits music when, and only when, a person chooses to become a user and then interacts with the service.

Under similar circumstances, courts have repeatedly held that a defendant that operates an Internet-based service—like Spotify—does not *itself* create a contact with the forum state simply because the service has users in that state. For

8

example, the Seventh Circuit has explained that "the operation of an interactive website does not show that *the defendant* has formed a contact with the forum state. And, without *the defendant's creating* a sufficient connection (or 'minimum contacts') with the forum state itself, personal jurisdiction is not proper." *Advanced Tactical*, 751 F.3d at 803 (emphasis added)).

Similarly, a federal court in Chicago recently rejected "the notion that" Facebook's "operation of an interactive site is sufficient to confer specific jurisdiction on it in every state from which the site can be accessed." *Gullen*, 2016 WL 245910, at *2. Because the plaintiff in *Gullen* had failed to "allege that Facebook targets" the challenged conduct—its "Tag Suggestions" feature—"at Illinois residents" in particular, "the fact that [Facebook's] site is accessible to Illinois residents does not confer specific jurisdiction over Facebook." *Id.*

The same is true here: Spotify's operation of an Internet-based service accessible to California users (as well as users around the country and the globe) does not mean that Spotify itself has "'formed a contact with'" California (*id.* (quoting *Advanced Tactical*, 751 F.3d at 803)). Accordingly, there is no specific personal jurisdiction over Spotify in this case for this additional, independent reason.

### 3. The Only Contacts That Spotify Itself Has Created With The Forum Are Not Suit-Related.

Plaintiff's complaint points to only one form of contact that conceivably reflects Spotify's direction of contacts towards California in particular: Spotify's two California offices. But those offices are irrelevant to specific jurisdiction, because they are not related to this lawsuit. And as *Walden* holds directly, it is the "defendant's *suit-related* conduct" that "must create a substantial connection with the forum State." 134 S. Ct. at 1121 (emphasis added).

Spotify's two small offices in California do not fit the bill. They employ a

9

total of approximately 50-60 employees.  Doshi Decl. ¶¶ 21-22.  This is far less than the 450-500 employees located in New York, which is the hub of the company's United States operations.  Doshi Decl. ¶ 9.  All but eight of these employees work in roles unrelated to the content part of Spotify's business.  Doshi Decl. ¶ 22.  The majority of California employees work in advertising sales and of the few California employees who perform work related to the content side of Spotify's business, not a single one is involved with music composition licensing—the subject matter of this litigation.  *See* Doshi Decl. ¶¶ 22-23.  Thus, Spotify's California offices do not constitute "suit-related" contacts and accordingly cannot support specific jurisdiction in this case.

Plaintiff may also seek to argue that Spotify has established contacts with California by litigating in California courts in other cases.  But specific jurisdiction is analyzed on a "case-by-case basis."  *Braun v. Crown Crafts Infant Prods., Inc.*, 2013 WL 1154498, at *2 (W.D. Wash. Mar. 20, 2013).  Thus, the existence of prior litigation in California says nothing about whether specific jurisdiction is available in *this* case.

\* \* \*

Because there is neither general jurisdiction nor specific jurisdiction over Spotify in California, this case must be dismissed for lack of personal jurisdiction.

## III.  IN THE ALTERNATIVE, THE CASE SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK.

In the alternative, this Court should transfer this case to the U.S. District Court for the Southern District of New York under 28 U.S.C. §1404(a).  As described more fully below, the Southern District of New York, where Spotify's United States operations are based and where all of its knowledgeable witnesses and documents are located, as well as where key third-party witnesses and documents are located, is a far more convenient and appropriate forum for this litigation than this District, where *no* known documents or witnesses may be

10

1 | found, from the parties or otherwise.

2 | **A. Virtually All The Factors Courts Consider In Deciding Whether Venue Is Inconvenient Point Toward Transferring This Case to the Southern District of New York.**

3 |

4 | A district court may transfer a civil action to any other district where it could

5 | have been brought "[f]or the convenience of the parties and witnesses, in the

6 | interests of justice." 28 U.S.C. § 1404(a).  There is no question that Lowery could

7 | have brought this suit in the Southern District of New York, because Spotify's

8 | principal place of business is located in New York City and Spotify is therefore

9 | subject to personal jurisdiction in that district.  *See* 29 U.S.C. §1391(b)(1)-(2).

10 | Thus, transfer is appropriate as long as "'consideration[s] of convenience and

11 | fairness'" favor transfer. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th

12 | Cir. 2000) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

13 | The Supreme Court has instructed that the "public" and "private" interest

14 | factors relevant to transfer include:

15 | • the parties' "relative ease of access to sources of proof";

16 | • the "availability of compulsory process for attendance of unwilling

17 | witnesses";

18 | • "some weight to the plaintiffs' choice of forum";

19 | • "local interest in having a localized controversy decided at home";

20 | • "administrative difficulties flowing from court congestion"; and

21 | • in diversity jurisdiction cases, "having the trial . . . in a forum that is at

22 | home with the law."

23 | *Atl. Marine Constr. Co. v. U.S. Dist. Court for Western Dist. of Tex.*, 134 S. Ct.

24 | 568, 581 n.6 (2013) (citations and internal quotation marks omitted).

25 | Here, all of the most significant factors weigh squarely in favor of transfer

26 | and the remaining factors are largely neutral, while *none* of the factors favors

27 | Plaintiff.

28 |

11

### 1.     The Southern District Of New York Is A Far More Convenient Forum For Both Parties.

The Southern District of New York is a far more convenient forum for *both* parties than this District.  Spotify's headquarters are located in New York City and Plaintiff is a Georgia resident; neither party resides here.

Moreover, in a class action lawsuit, the defendant's presence in the transferee venue is a "weighty consideration" in deciding whether to grant a transfer.  *In re Yahoo! Inc.*, 2008 WL 707405, at *3 (C.D. Cal. Mar. 10, 2008) (granting transfer to defendant's home district, where plaintiffs did not allege that they resided in the transferor district or that the transferor district was otherwise convenient to them for any particular reason).  Spotify's United States operations are based in New York, the company's largest U.S. office, where Spotify employs approximately 450-500 employees.  Doshi Decl. ¶ 9.  The most senior employees of Spotify USA Inc., including its Chief Content Officer, Chief Revenue Officer, Chief Marketing Officer, and Global Head of Communications and Public Policy, work in the New York office.  Doshi Decl. ¶ 9.  Furthermore, this lawsuit makes allegations relating to Spotify's publishing licensing and royalty payment procedures.  Compl. ¶¶ 1-3.   All Spotify employees in the United States with knowledge of these policies and procedures work in New York and live either in New York or in the New York metropolitan area.  Doshi Decl. ¶ 15.  These employees include:

- *Sachin Doshi*, VP of Content Strategy & Operations, who is knowledgeable about where documents and other evidence relevant to plaintiff's allegations may be found and where certain potential witnesses are located;

- *Stefan Blom*, Chief Content Officer and Chief Strategy Officer, who is knowledgeable about Spotify's overall licensing practices and strategy, including with respect to obtaining mechanical licenses;

12

- ***Andrew Contompasis***, Technical Account Manager, who is knowledgeable about how content physically is delivered to Spotify from record labels and how it makes its way onto the service;

- ***James Duffett-Smith***, formerly an attorney for Spotify who was recently named Head of Publisher Relations, who is knowledgeable about Spotify's relationship with HFA, Spotify's relationships with music publishers, and Spotify's agreements relating to music publishing rights (including mechanical rights); and

- ***Niklas Lundberg***, formerly Head of Content Insight and recently named Head of Licensing for Labels and Recordings, who is knowledgeable about Spotify's relationship with HFA and Spotify's relationships with music publishers.

Doshi Decl. ¶¶ 1, 15. Former employee **Kenneth Parks** also resides in New York and is knowledgeable about Spotify's overall licensing practices and strategy, including with respect to obtaining mechanical licenses (prior to the time of his recent departure). Parks was Spotify's Chief Content Officer until September 2015 and from October 2015 to present has been engaged to provide consulting services to Spotify. Doshi Decl. ¶ 15.

By contrast, *no* Spotify employees with knowledge relevant to this action may be found in California. Doshi Decl. ¶¶ 15, 23.[5] Spotify documents relevant to Plaintiff's allegations are most likely to be in the possession of the New York employees named above, and would therefore be collected and reviewed at Spotify's New York offices. Doshi Decl. ¶ 16. Thus, it would be far more convenient for Spotify to defend against this lawsuit in New York. Doshi Decl. ¶

[5] Although Spotify maintains two small offices in California, one in San Francisco and one in Los Angeles, neither of the company's California offices houses documents relevant to this litigation, and none of Spotify's California-based employees has any knowledge relevant to this litigation. Doshi Decl. ¶¶ 21, 23.

SPOTIFY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE. CASE NO. 2:15-CV-09929-BRO-RAO

24.

Litigating in New York would also be more convenient and cost-efficient for *Plaintiff*, who is a resident of Georgia.  Compl. ¶ 7.  Plaintiff would certainly have to appear for any trial in this action, and may well appear at other court proceedings.  For such appearances, Georgia is of course much closer to New York than to California.  In short, the convenience of both parties favors transfer to New York.

## 2. The Southern District of New York Is A More Convenient Forum For Witnesses.

"The convenience of the witnesses is usually the most important factor to consider in deciding whether to transfer an action."  *Yahoo!*, 2008 WL 707405, at *3.  This factor, too, weighs heavily in favor of transfer: virtually *no* relevant witnesses reside in California, while all of Spotify USA's witnesses and most of the non-party witnesses, with the exception of Spotify AB employees in Sweden, reside in New York (or the New York metropolitan area).

For example, all potential party witnesses in this litigation (other than plaintiff Lowery) live either in New York or in the New York metropolitan area.  Doshi Decl. ¶ 15.[6]  At least some of these employees are likely to be called as witnesses in this action.

Even more relevant is the fact that the *non-party* witnesses likely to be called are also predominantly located in New York.  "The convenience of non-party witnesses is often the most important factor in determining whether a transfer under § 1404 is appropriate."  *Hamilton v. Genesis Logistics, Inc.*, 2013 WL 3168373, at *6 (C.D. Cal. June 20, 2013); *see also, e.g.*, *Galliani v. Citimortgage, Inc.*, 2013 WL 101411, at *4 (E.D. Cal. Jan. 7, 2013) ("It is axiomatic that

---

[6]   As discussed above, there are employees of Spotify's parent company (Spotify AB) located in Sweden with relevant information, but Spotify AB is not a party to this lawsuit.

SPOTIFY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE. CASE NO. 2:15-CV-09929-BRO-RAO

1   convenience of non-party witnesses is frequently the most important factor in the

2   section 1404(a) calculus."); *Yahoo!*, 2008 WL 707405, at *3 ("[I]t is often the

3   convenience of the non-party witnesses that figures most prominently in [the

4   transfer] analysis.").

5          Here, that "most important" consideration points decisively in favor of

6   transfer: the Harry Fox Agency ("HFA"), a rights management, licensing, and

7   royalty services company headquartered in New York,[7] plays an important role in

8   connection with activities at issue in the Complaint, as HFA is Spotify's exclusive

9   third party licensing agent for mechanical rights in the United States.  Doshi Decl.

10  ¶ 17.  Accordingly, the HFA employees who perform the relevant music licensing

11  services on behalf of Spotify in New York are likely to have especially relevant

12  testimony and documents.  Doshi Decl. ¶ 18.  Litigating this case in the Southern

13  District of New York would be far more convenient for these key non-party

14  witnesses who work (and presumably reside) in New York than proceeding here.

15         Furthermore, a small number of Spotify AB employees who work and reside

16  in Sweden are also knowledgeable about Spotify's licensing of musical

17  compositions in the United States and/or the Spotify/HFA relationship.  Doshi

18  Decl. ¶ 19.  These employees include: Per Malm, Chapter Lead Manager, Content

19  Engineering Chapter; Erik Olsson, Content Analyst; Simon Hartikainen, Senior

20  Content Analysis Manager; and Johan Forshufvud, Strategic Partnership Manager.

21  Doshi Decl. ¶ 19.  To the extent that those witnesses might appear at trial, it would

22  obviously be more geographically convenient for them if this litigation took place

23  in New York rather than Los Angeles.  And, at a minimum, their presence outside

24  of either of the competing districts does not favor either district.

25         Finally, Cindy Charles, a former legal advisor and business consultant to

26

27  [7]   *See* Stillman Decl. Ex. C (S&P Report showing Harry Fox Agency's

28  primary office location in New York, New York).

15

Spotify, is also knowledgeable about central issues to this litigation.  Doshi Decl. ¶ 20.   In particular, Charles was involved in developing Spotify's musical composition licensing program in the United States and advised Spotify during its negotiations with HFA related to HFA becoming Spotify's exclusive third party licensing agent for mechanical rights in the United States.  Doshi Decl. ¶ 20.  Although certain of her testimony and documents are likely to be protected by the attorney-client privilege, any non-privileged testimony and documents will be highly relevant to the issues in this case.  Charles primarily resides in New York, but travels frequently to the San Francisco Bay area on business, where her husband also maintains a residence.  Doshi Decl. ¶ 20.  Although San Francisco is located in California, it is nearly 400 miles away from Los Angeles.

Indeed, the location of third party witnesses is more than a matter of mere convenience, as they may be outside this Court's subpoena power.  Courts have often examined whether non-party witnesses are outside the court's subpoena power in considering whether to transfer a lawsuit.  *U.S. v. One Oil Painting Entitled Femme en Blanc by Pablo Picasso*, 362 F. Supp. 2d 1175, 1185-86 (C.D. Cal. 2005); *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1165-66 (S.D. Cal. 2005) (ability to compel testimony weighed "strongly in favor of transfer" where current and former employees of a non-party with information material to the lawsuit resided beyond the reach of the transferor court's subpoena power but within the subpoena power of the transferee court); *Leyvas v. Bezy*, 2008 WL 2026276, at *4 (D. Ariz. May 9, 2008) ("inability of the Court to compel the attendance of certain witnesses would certainly favor transferring the case").  Accordingly, the fact that numerous potential third-party witnesses work (and presumably live) within the subpoena power of the Southern District of New York—while none, to Spotify's knowledge, reside within the subpoena power of this District—demonstrates that the "relative ease and access to sources of proof" clearly favors transfer to New

16

York. *Atl. Marine*, 134 S. Ct. at 581 n.6.

### 3.    Plaintiff's Choice Of Forum Is Entitled To No Deference Here.

Ordinarily, a plaintiff's choice of venue is entitled to "some weight" (*Atl. Marine,* 134 S. Ct. at 581 n.6), but where (as here) "'the forum lacks a significant connection to the activities alleged in the complaint, the degree to which courts defer to the plaintiff's chosen venue is 'substantially reduced.'" *Broad. Data Retrieval Corp. v. Sirius Satellite Radio, Inc.*, 2006 WL 1582091, at *3 (C.D. Cal. June 6, 2006) (quoting *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001)). Here, as discussed above, the operative facts which underlie Plaintiff's claims—Spotify's licensing efforts and royalty payment procedures—occurred in New York.  Accordingly, California lacks any "significant connection" to this case.

Moreover, plaintiff is a Georgia resident, not a California resident, and it is well established that a foreign plaintiff's choice of venue "deserves less deference than the forum choice of a domestic plaintiff." *Saleh*, 361 F. Supp. 2d at 1157 (quoting *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000)); *see also Fabus Corp. v. Asiana Express Corp.*, 2001 WL 253185, at *1 (N.D. Cal. Mar. 5, 2001) ("[t]he degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff's venue choice is not its residence"); *Painter's Dist. Council No. 30 Health & Welfare Fund v. Amgen, Inc.*, 2007 WL 4144892, at *3-4 (C.D. Cal. Nov. 13, 2007) (concluding that plaintiff's choice of forum was entitled to less deference "because California is not Plaintiff's domicile and Plaintiff has no contact with this district").

In addition, "the Ninth Circuit, 'like other courts, has noted that the weight to be given the plaintiff[']s choice of forum is discounted where the action is a class action.'" *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1146 (C.D. Cal.

17

2009) (quoting *Saleh*, 361 F. Supp. 2d at 1157); *see also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *Painter's*, 2007 WL 4144892, at *3-4; *Hoefer v. U.S. Dep't of Commerce*, 2000 WL 890862, at *2 (N.D. Cal. June 28, 2000) ("[L]ittle deference . . . is given to a plaintiff's choice of forum in an action brought on behalf of a nationwide class."). In short, Plaintiff's choice of forum in this putative class action filed across the country from where he lives is entitled to little weight and less deference, and thus the factor does not weigh against transfer.

### 4. The Southern District of New York Has An Interest In And Ability To Adjudicate This Matter.

The Southern District of New York has a substantial connection to, and local interest in, this litigation. Because Spotify's U.S. operations are based in New York, that state has a "local interest" in Plaintiff's claims against one of its corporate citizens. By contrast, there is *no* relevant connection between Plaintiff's claims and this District. In addition, no identified witnesses reside in this District, and no documentary evidence is located here.

Furthermore, the Southern District of New York is just as familiar with applying federal copyright law as this Court. *See ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 551 (S.D.N.Y. 2008) (both California and New York courts "are familiar with federal copyright law and have substantial experience applying it."). And no docket congestion considerations favor the Central District of California over the Southern District of New York; to put it mildly, "neither court is lacking for work." *ESPN*, 581 F.Supp.2d at 551.[8] Moreover, no unique "administrative difficulties" tethered to docket congestion are likely to arise in either court. *Atl. Marine,* 134 S. Ct. at 581 n.6. This factor is therefore neutral as

[8]   *See* Stillman Decl. Ex. D., U.S. Courts, *Federal Court Management Statistics—June 2015*, http://www.uscourts.gov/statistics-reports/federal-court-management-statistics-june-2015 (last updated June 30, 2015) (Central District of California saw 511 civil filings per judgeship in most recent 12-month period, whereas Southern District of New York saw 401).

18

to transfer.

### B. The Court May Grant a Transfer Without Deciding the Question of Personal Jurisdiction.

The Supreme Court has explained that "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)).   This "leeway" promotes judicial efficiency by allowing a court to take whatever it thinks is the "less burdensome course" in disposing of a case. *Id.* at 436.

"The law is clear that the Court need not resolve a motion to dismiss for lack of personal jurisdiction before deciding whether to transfer the case to another district under 28 U.S.C. § 1404." *Halvorson v. Solaroad Technologies Group, LLC*, 2011 WL 1837748, *2 (W.D. Wash. May 12, 2011) (citing *Nelson v. Int'l Paint Co.*, 716 F.2d 640, 643 n.4 (9th Cir.1983)).   Courts in this District have recognized their power to transfer a case without deciding questions of jurisdiction when there are "sound arguments for transfer" that make the issue of transfer especially easy to resolve. *Pub. Emps.' Ret. Sys. of Miss. v. Stanley*, 605 F. Supp. 2d 1073, 1075 (C.D. Cal. 2009); *see also, e.g.*, *Turner v. Harrah's New Orleans Hotel & Casino*, 2011 WL 1666925, at *3 (C.D. Cal. Apr. 7, 2011) (granting transfer without considering personal jurisdiction); *W. Digital Techs., Inc. v. Bd. of Regents of Univ. of Texas Sys.*, 2011 WL 97785, at *6 n.3 (N.D. Cal. Jan. 12, 2011) (granting transfer without reaching issues of personal jurisdiction or first-to-file); *Yung v. Institutional Trading Co.*, 2008 WL 1734743, at *1 (N.D. Cal. Apr. 14, 2008) (granting transfer without reaching issue of personal jurisdiction); *Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1106 (C.D. Cal. 2001) (same); *Whiteman v. Grand Wailea Resort*, 1999 WL 163044, at *3 n.4 (N.D. Cal. Mar. 17, 1999) (same).

Accordingly, this Court can order a transfer without reaching the

19

constitutional due process question of personal jurisdiction over Spotify. Such an approach would be an appropriate and expeditious way to resolve the challenges to allowing this case to proceed in California.

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss this case for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), or, in the alternative, transfer the case to the Southern District of New York pursuant to 28 U.S.C. § 1404.

Dated: February 12, 2016

**MAYER BROWN LLP**

*/s/ John Nadolenco*
John Nadolenco
Eugene Volokh
350 South Grand Avenue
Los Angeles, California 90071
jnadolenco@mayerbrown.com
T 213.229.5173
F 213.576.8133

A. John P. Mancini (admitted *pro hac vice*)
Allison Levine Stillman*
1221 Avenue of the Americas
New York, New York 10020
jmancini@mayerbrown.com
astillman@mayerbrown.com
T 212.506.2295
F 212.849.5895

Archis A. Parasharami*
1999 K Street, N.W.
Washington, D.C. 20006
aparasharami@mayerbrown.com
T 202.263.3328
F 202.263.5328

*\* Pro hac vice application to be filed*

***Attorneys for Defendant Spotify USA Inc.***

20

SPOTIFY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE. CASE NO. 2:15-CV-09929-BRO-RAO