**MAYER BROWN LLP**
JOHN NADOLENCO (SBN 181128)
*jnadolenco@mayerbrown.com*
EUGENE VOLOKH (SBN 194464)
*evolokh@mayerbrown.com*
350 South Grand Avenue, 25th Floor
Los Angeles, California 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

A. JOHN P. MANCINI (admitted *pro hac vice*)
*jmancini@mayerbrown.com*
ALLISON LEVINE STILLMAN*
*astillman@mayerbrown.com*
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2500
Facsimile: (212) 849-5895

ARCHIS A. PARASHARAMI*
*aparasharami@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3328
Facsimile: (202) 263-5328

* Pro hac vice application to be filed

Attorneys for Defendant SPOTIFY USA INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LOWERY, individually and on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SPOTIFY USA INC., a Delaware corporation,<br><br>Defendant. | Case No. 2:15-cv-09929-BRO-RAO<br><br>**DECLARATION OF SACHIN DOSHI IN SUPPORT OF DEFENDANT SPOTIFY USA INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**<br><br>Date: April 4, 2016<br>Time: 1:30 p.m.<br>Judge: Hon. Beverly Reid O'Connell |

I, Sachin Doshi, declare and state as follows:

1. I am an employee of Spotify USA Inc. ("Spotify") and currently work at Spotify's U.S. headquarters in New York, New York. I have been a Spotify employee since October 2011 and my current title is VP of Content Strategy & Operations.

2. As VP of Content Strategy & Operations, I am responsible for a variety of matters relating to strategy and operations for Spotify's Content team. In my role as VP of Content Strategy & Operations, I work closely with the broader Content & Distribution team at Spotify, including many individuals whose job functions relate to the manner by which content is licensed by Spotify and technically added to the Spotify service.

3. I make this declaration in support of Spotify's motion to dismiss the action, or, in the alternative, to transfer this action to the United States District Court for the Southern District of New York.

4. I make this declaration based upon my personal knowledge and review of certain business records that are either prepared and maintained in the ordinary course of Spotify's business or are generated from queries to Spotify's electronic databases. My personal knowledge of the facts stated herein is also informed by my discussions with Spotify employees who have knowledge of or involvement with the licensing of musical compositions in the United States and/or Spotify's relationship with Spotify's exclusive third party licensing agent in the United States, namely the Harry Fox Agency ("HFA"). I could and would competently testify to where documents and other relevant evidence may be found and where certain potential witnesses are located if called as witness in this action.

5. I understand that Plaintiff David Lowery has filed a complaint against Spotify in the above-referenced action (the "Complaint"). The Complaint makes allegations relating to Spotify's licensing of musical compositions. The Complaint

alleges, in relevant part, that Spotify has used copyrighted musical works "without mechanical licenses" and seeks to bring an action on behalf of "similarly-situated holders of mechanical rights". (Compl. ¶1.)

6. In my role as VP of Content Strategy & Operations, I am knowledgeable about those persons employed by Spotify with knowledge of Spotify's mechanical licensing and royalty payment procedures, as well as other business and financial information that may be relevant to this litigation. I also have knowledge as to where documents and other evidence relevant to these allegations may be found, where certain third party companies (including some of their employees that have worked with Spotify) are located, and where certain potential witnesses are located.

**Spotify's Corporate Structure**

7. Spotify USA Inc. is a wholly-owned subsidiary of Spotify AB, a company organized under the laws of Sweden.

8. Spotify USA Inc. is a Delaware corporation whose principal place of business is located at 45 West 18th Street, 7th Floor, New York, NY 10011.

9. Spotify employs approximately 450-500 people at its New York headquarters. The New York office is the hub of the company's United States operations and is by far Spotify's largest office in the United States. The most senior employees of Spotify USA, Inc., including its Chief Content Officer, Chief Revenue Officer, Chief Marketing Officer, and Global Head of Communications and Public Policy, work in the New York office.

**The Spotify Service**

10. Spotify is a digital music streaming service that allows users to stream music (and other related media) over the Internet to a wide range of devices, including personal computers, tablets, smartphones, cars, TVs, speakers, gaming consoles, and more.

11. Relationships between Spotify and its users are initiated by the users, who create Spotify accounts and (in most cases) download Spotify software or applications to their personal computers or mobile devices.

12. Interactions between users' devices and the Spotify service are likewise initiated and controlled by users, who decide whether and when music is transmitted through the Spotify service to their devices.

13. In order to play music using the Spotify service, users must first log on to the Spotify service through the Spotify software or website on their devices. The Spotify service is completely portable: a Spotify user who created an account in California can stream music to her device in another state (or sometimes another country) and the catalog of content available to users in California is the same as that which is available to users anywhere else in the United States.

**Spotify's U.S. Mechanical Licensing Activities Are Based in New York**

14. Spotify's United States mechanical licensing activities are exclusively performed by Spotify employees in New York City or Spotify AB employees in Sweden, and/or by Spotify's exclusive third party licensing agent for mechanical rights in the United States, HFA, which also performs all of its relevant activities in New York City.

15. Spotify employees who work in New York and live either in New York or in the New York metropolitan area and who have knowledge relevant to the issues raised in this action include (in addition to myself): Stefan Blom, Chief Content Officer and Chief Strategy Officer, who is knowledgeable about Spotify's overall licensing practices and strategy and its approach to obtaining mechanical licenses; Andrew Contompasis, Technical Account Manager, who is knowledgeable about how content physically is delivered to Spotify from record labels and how it makes its way onto the service; James Duffett-Smith, formerly an attorney for Spotify who was recently named Head of Publisher Relations, who is knowledgeable about Spotify's relationship with HFA,

4

Spotify's relationships with music publishers, and Spotify's agreements relating to music publishing rights (including mechanical rights); and Niklas Lundberg, formerly Head of Content Insights and recently named Head of Licensing for Labels and Recordings, who is knowledgeable about Spotify's relationship with HFA and Spotify's relationships with music publishers.  Former employee Kenneth Parks also resides in New York and is knowledgeable about Spotify's overall licensing practices and strategy (prior to the time of his recent departure) and its approach to obtaining mechanical licenses in the United States.  Parks was Spotify's Chief Content Officer until September 2015 and from October 2015 to present has been engaged to provide consulting services to Spotify.  I am not aware of any Spotify employees in any other United States offices who would have information or knowledge relevant to this action.

16. Accordingly, Spotify documents relevant to Plaintiff's allegations are most likely to be in the possession of these employees located in New York, and would therefore be collected and reviewed at Spotify's New York offices.

**Relevant Third Parties Are Also Predominantly Located in New York**

*The Harry Fox Agency*

17. HFA is a rights management, licensing, and royalty services company based in New York which plays an important role in connection with Spotify's licensing of musical compositions, as HFA is Spotify's exclusive third party licensing agent for mechanical rights in the United States.

18. As HFA is Spotify's exclusive third party licensing agent for mechanical rights in the United States, HFA employees that perform the relevant music licensing services on behalf of Spotify in New York are likely to have especially relevant testimony and documents.

*Spotify AB*

19. A small number of Spotify AB employees who work and reside in Sweden

5

are also knowledgeable about Spotify's licensing of musical compositions in the United States and/or the Spotify-HFA relationship. These Spotify AB employees include: Per Malm, Chapter Lead Manager, Content Engineering Chapter; Erik Olsson, Content Analyst; Simon Hartikainen, Senior Content Analysis Manager; and Johan Forshufvud, Strategic Partnership Manager.

### *Cindy Charles*

20. Cindy Charles, a former legal advisor and business consultant to Spotify, is also knowledgeable about central issues to this litigation. In particular, Charles was involved in developing Spotify's musical composition licensing program in the United States and advised Spotify during its negotiations with HFA for HFA to become Spotify's exclusive third party licensing agent for mechanical rights in the United States. Although certain of her testimony and documents are likely to be protected by the attorney-client privilege, any non-privileged testimony and documents will be highly relevant to the issues in this case. Charles primarily resides in New York, but travels frequently to the San Francisco Bay area on business, where her husband also maintains a residence.

## **Spotify Has Minimal Connection to California**

21. Spotify maintains two small offices in the State of California: one located at 988 Market Street, San Francisco, CA 94109, and one located at 9200 Sunset Boulevard, West Hollywood, CA 90069.

22. Spotify's two California offices employ a combined total of approximately fifty (50) to sixty (60) people. All but eight (8) of these employees work in roles unrelated to the content part of Spotify's business. The biggest area of work in these two offices is advertising sales. The offices also include individuals who work in software engineering, product design, and business development. Of the remaining eight employees, three work in the area of original content (i.e., developing new content

6

DECLARATION OF SACHIN DOSHI IN SUPPORT OF SPOTIFY'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR, IN THE ALTERNATIVE, TO TRANSFER VENUE;
CASE NO. 2:15-CV-09929-BRO-RAO

specifically for Spotify), four work on artist or record label relations (i.e., maintaining relationships with artists and record labels, developing promotional opportunities, and the like), and one is involved in content curation.

23. None of the Spotify employees in the company's two California offices is involved with music composition licensing. Accordingly, I am not aware of any Spotify witness with information relevant to this litigation who resides in California; nor am I aware of any document specifically located in California that is likely to be relevant to this litigation.

24. Because I and all of the other Spotify employees and former employees referenced herein work and live in the New York area, New York City would be a far more convenient place for Spotify to litigate this case than Los Angeles.

**Relevant Third Parties Have Minimal Connection to California**

25. The HFA employees who perform music licensing services for Spotify on an exclusive basis all work in New York City. Cindy Charles, who consulted on Spotify's agreement with HFA, also primarily resides in New York, though she travels frequently to the San Francisco Bay area. The remaining third parties with knowledge relevant to this litigation consist of Spotify AB employees located in Sweden.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this ___ day of February, 2016.

                                                     *[signature page to follow]*
                                                         Sachin Doshi

specifically for Spotify), four work on artist or record label relations (i.e., maintaining relationships with artists and record labels, developing promotional opportunities, and the like), and one is involved in content curation.

23. None of the Spotify employees in the company's two California offices is involved with music composition licensing. Accordingly, I am not aware of any Spotify witness with information relevant to this litigation who resides in California; nor am I aware of any document specifically located in California that is likely to be relevant to this litigation.

24. Because I and all of the other Spotify employees and former employees referenced herein work and live in the New York area, New York City would be a far more convenient place for Spotify to litigate this case than Los Angeles.

**Relevant Third Parties Have Minimal Connection to California**

25. The HFA employees who perform music licensing services for Spotify on an exclusive basis all work in New York City. Cindy Charles, who consulted on Spotify's agreement with HFA, also primarily resides in New York, though she travels frequently to the San Francisco Bay area. The remaining third parties with knowledge relevant to this litigation consist of Spotify AB employees located in Sweden.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 10th day of February, 2016.

_____
Sachin Doshi