1
2
3
4
5

**MAYER BROWN LLP**
JOHN NADOLENCO (SBN 181128)
*jnadolenco@mayerbrown.com*
EUGENE VOLOKH (SBN 194464)
*evolokh@mayerbrown.com*
350 South Grand Avenue, 25th Floor
Los Angeles, California  90071-1503
Telephone:   (213) 229-9500
Facsimile:    (213) 625-0248

6
7
8
9

A. JOHN P. MANCINI (admitted *pro hac vice*)
*jmancini@mayerbrown.com*
ALLISON LEVINE STILLMAN*
*astillman@mayerbrown.com*
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone:   (212) 506-2295
Facsimile:    (212) 849-5895

10
11
12
13
14

ARCHIS A. PARASHARAMI*
*aparasharami@mayerbrown.com*
DANIEL E. JONES*
*djones@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone:   (202) 263-3328
Facsimile:    (202) 263-5328

15

*Pro hac vice application to be filed*

16

Attorneys for Defendant SPOTIFY USA INC.

17

**UNITED STATES DISTRICT COURT**

18

**CENTRAL DISTRICT OF CALIFORNIA**

19

20
21
22
23
24
25
26

DAVID LOWERY, individually
and on behalf of himself and all
others similarly situated,

                    Plaintiffs,

          vs.

SPOTIFY USA INC., a Delaware
corporation,

                    Defendant.

Case No. 2:15-cv-09929-BRO-RAO

**DEFENDANT SPOTIFY USA INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
MOTION TO STRIKE CLASS
ALLEGATIONS**

Date:      April 4, 2016
Time:      1:30 pm
Judge:     Hon. Beverly Reid O'Connell

27
28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 3

LEGAL STANDARD ............................................................................................... 4

ARGUMENT ............................................................................................................ 5

I.   The Proposed Class Is An Impermissible Fail-Safe Class. ........................... 5

II.  The Proposed Class Is Not Ascertainable. .................................................... 7

III. The Putative Class Does Not Satisfy Rule 23(a)(2). .................................... 12

    A.   Plaintiff's Allegations Are Incapable Of Class-Wide
        Resolution. ............................................................................................. 13

        1.   Whether A Work Has A Valid Copyright Registration .......... 13

        2.   Whether Spotify Has a License or Authorization To
            Distribute Any Particular Composition .................................. 15

        3.   Whether Spotify "Made Accurate Royalty Payments" ........... 18

        4.   The Basis and Method for Determining and Computing
            Damages .................................................................................. 18

        5.   Willful Infringement ............................................................... 19

    B.   In Light Of These Individualized Inquiries, Rule 23 And Due
        Process Prohibit Certification Of Plaintiff's Proposed Class. ........... 20

IV. Plaintiff Cannot Establish Predominance And Superiority Under Rule
    23(b)(3). ........................................................................................................ 23

V.  Plaintiff Cannot Certify A Rule 23(b)(2) Injunctive Class Either. ............. 25

CONCLUSION ....................................................................................................... 27

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re 2TheMart.com, Inc. Secs. Litig.*,
  114 F. Supp. 2d 955 (C.D. Cal. 2000) ................................................................. 3

*Am. W. Door & Trim v. Arch Specialty Ins. Co.*,
  2015 WL 1266787 (C.D. Cal. Mar. 18, 2015) ........................................... 3, 4, 24

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................... 23

*Angel Music Inc. v. ABC Sports, Inc.*,
  112 F.R.D. 70 (S.D.N.Y. 1986) ........................................................................... 21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 3

*Authors Guild v. Google, Inc.*,
  721 F.3d 132 (2d Cir. 2013) ............................................................................... 21

*Bateman v. Am. Multi-Cinema, Inc.*,
  623 F.3d 708 (9th Cir. 2010) .............................................................................. 25

*BMW of North America, Inc. v. Gore*,
  517 U.S. 559 (1996) ........................................................................................... 24

*Brazil v. Dell Inc.*,
  585 F. Supp. 2d 1158 (N.D. Cal. 2008) ........................................................... 7, 8

*Cartoon Network LP v. CSC Holdings, Inc.*,
  536 F.3d 121 (2d Cir. 2008) ............................................................................... 17

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013) ....................................................................................... 23

*Deitz v. Comcast Corp.*,
  2007 WL 2015440 (N.D. Cal. July 11, 2007) ..................................................... 7

*eBay, Inc. v. MercExchanges, LLC*,
  547 U.S. 388 (2006) ........................................................................................... 26

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Effects Assocs., Inc. v. Cohen*,
   908 F.2d 555 (9th Cir. 1990) ........................................................................ 16

*Fantasy, Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir. 1993) ......................................................................... 5

*Field v. Google Inc.*,
   412 F. Supp. 2d 1106 (D. Nev. 2006) ............................................................ 16

*Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.*,
   807 F.2d 1110 (2d Cir. 1986) .................................................................... 18, 19

*In re Flash Memory Antitrust Litig.*,
   2010 WL 2332081 (N.D. Cal. June 9, 2010) .................................................... 7

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*,
   654 F.3d 989 (9th Cir. 2011) ......................................................................... 26

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
   2015 WL 4776932 (C.D. Cal. May 27, 2015) ........................................... 21, 22

*Fogerty v. Fantasy*
   510 U.S. 517 (1994) ....................................................................................... 19

*Football Assoc. Premier League Ltd. v. YouTube. Inc.*,
   297 F.R.D. 64 (S.D.N.Y. 2013) ....................................................... 1, 20, 21, 25

*Fraley v. Batman*,
   2016 WL 145984 (9th Cir. Jan. 6, 2016) ........................................................ 25

*Gen. Tel. Co. v. Falcon*,
   457 U.S. 147 (1982) ......................................................................................... 4

*Grannis v. Ordean*,
   234 U.S. 385 (1914) ....................................................................................... 21

*Heffelfinger v. Elec. Data Sys. Corp.*,
   2008 WL 8128621 (C.D. Cal. Jan. 7, 2008) ..................................................... 6

*Henley v. DeVore*,
   733 F. Supp. 2d 1144 (C.D. Cal. 2010) .......................................................... 20

iii

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Hovsepian v. Apple, Inc.*,
2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) .................................................. 5, 8

*In-Design v. K-Mart Apparel Corp.*,
13 F.3d 559 (2d Cir. 1994) ................................................................................ 19

*In re IPO Sec. Litig.*,
471 F.3d 24 (2d Cir. 2006) ................................................................................... 7

*Island Software & Computer v. Microsoft, Inc.*,
413 F.3d 257 (2d. Cir. 2005) ............................................................................. 20

*Jackson v. Sturkie*,
255 F. Supp. 2d 1096 (N.D. Cal. 2003) ............................................................ 19

*Jim Marshall Photography, LLC v. John Varvatos of Cal.*,
2013 WL 3339048 (N.D. Cal. June 28, 2013) ..................................................... 8

*Kamar v. RadioShack Corp.*,
375 F. App'x 734 (9th Cir. 2010) ..................................................................... 5, 6

*Keane Dealer Servs., Inc. v. Harts*,
968 F. Supp. 944 (S.D.N.Y. 1997) .................................................................... 16

*Kissling v. Ohio Casualty Ins. Co.*,
2010 WL 1978862 (E.D. Ky. May 14, 2010) ...................................................... 7

*Lindsey v. Normet*,
405 U.S. 56 (1972) ............................................................................................ 20

*In re Literary Works in Electronic Databases Copyright Litig.*,
654 F.3d 242 (2d Cir. 2011) .............................................................................. 21

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
658 F.3d 936 (9th Cir. 2011) ............................................................................. 20

*Marya v. Warner/Chappell Music, Inc.*,
2015 WL 5568497 (C.D. Cal. Sept. 22, 2015) ..................................... 11, 14, 15

*Marya v. Warner/Chappell Music, Inc.*,
2015 WL 7312632 (C.D. Cal. Nov. 9, 2015) ..................................................... 11

iv

# TABLE OF AUTHORITIES
(continued)

**Page**

*Mata v. CitiMortgage, Inc.*,
2012 WL 7985175 (C.D. Cal. July 20, 2012) ....................................................... 5

*Motta v. Samuel Weiser, Inc.*,
768 F.2d 481 (1st Cir. 1985) ................................................................................ 8

*Parker v. Time Warner Entm't Co., L.P.*,
331 F.3d 13 (2d Cir. 2003) ................................................................................. 24

*Peer Int'l Corp. v. Pausa Records, Inc.*,
909 F.2d 1332 (9th Cir. 1990) ............................................................................ 19

*Red v. Kraft Foods, Inc.*,
2012 WL 8019257 (C.D. Cal. Apr. 12, 2012) ...................................................... 7

*Resnick v. Copyright Clearance Ctr., Inc.*,
2003 WL 22176619 (D. Mass. Sept. 22, 2003) .................................................. 21

*Route v. Mead Johnson Nutrition Co.*,
2013 WL 658251 (C.D. Cal. Feb. 21, 2013) ........................................................ 5

*Salinger v. Colting*,
607 F.3d 68 (2d Cir. 2010) ................................................................................. 26

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................................. 5

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
309 U.S. 390 (1940). .......................................................................................... 19

*State Farm Mutual Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003) ........................................................................................... 24

*Stearns v. Select Comfort Retail Corp.*,
2009 WL 4723366 (N.D. Cal. Dec. 4, 2009) ....................................................... 8

*Stearns v. Select Comfort Retail Corp.*,
763 F. Supp. 2d 1128 (N.D. Cal. 2010) ............................................................... 7

v

# TABLE OF AUTHORITIES
(continued)

**Page**

*Stokes v. Citimortgage, Inc.*,
   2015 WL 709201 (C.D. Cal. Jan. 16, 2015)........................................ 3, 4, 24, 26

*Tidenberg v. Bidz.com*,
   2010 WL 135580 (C.D. Cal. Jan. 7, 2010)................................................. 2, 6, 7

*Tietsworth v. Sears*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) ............................................................. 8

*United Fabrics Int'l, Inc. v. G-III Apparel Grp., Ltd.*,
   2013 WL 7853485 (C.D. Cal. Dec. 27, 2013) .................................................. 20

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ............................................. 12, 20, 22, 23, 25

*WB Music Corp. v. Rykodisc, Inc.*,
   1995 WL 631690 (E.D. Pa. Oct. 26, 1995)........................................................ 21

*Wu v. Pearson Educ. Inc.*,
   2012 WL 6681701 (S.D.N.Y. Dec. 21, 2012)..................................................... 21

*Xavier v. Philip Morris USA Inc.*,
   787 F. Supp. 2d 1075 (N.D. Cal. 2011) ............................................................... 7

*Young v. Nationwide Mut. Ins. Co.*,
   693 F.3d 532 (6th Cir. 2012) ............................................................................... 5

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001)............................................................. 23, 25, 26

**Rules**

Fed. R. Civ. P. 12(f)............................................................................................. 4

Fed. R. Civ. P. 23................................................................................ 1, 4, 7, 20

Fed. R. Civ. P. 23(a) ....................................................................... 2, 12, 22, 23

Fed. R. Civ. P. 23(b) ...................................................................................*passim*

Fed. R. Civ. P. 23(c) ........................................................................................... 4

# TABLE OF AUTHORITIES
### (continued)

**Page**

Fed. R. Civ. P. 23(d) .................................................................... 4

**Statutes**

17 U.S.C. § 10 .............................................................................. 14

17 U.S.C. § 24 .............................................................................. 14

17 U.S.C. § 104 ............................................................................ 14

17 U.S.C. § 104A .......................................................................... 14

17 U.S.C. § 106 ............................................................................ 4

17 U.S.C. § 115 ............................................................................ 15

17 U.S.C. § 203 ............................................................................ 13

17 U.S.C. § 405 ............................................................................ 14

17 U.S.C. § 501 ............................................................................ 4

17 U.S.C. § 504(c) ................................................................. 18, 24

**Treatises**

7A Charles Alan Wright et al., Fed. Prac. & Proc. § 1760 ........................ 7

7A Charles Alan Wright et al., Fed. Prac. & Proc. § 1778 ..................... 23

3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 10.03[A] (1989) ............... 16

1

## **INTRODUCTION**

2       This case is a fatally flawed candidate for class treatment, and the Court

3  should strike the class action allegations.  Plaintiff David Lowery alleges that

4  Defendant Spotify USA Inc. (Spotify) infringed his mechanical rights in some

5  (though not all) of his musical works by failing to obtain the proper license or

6  authorization before making those works (also known as compositions) available

7  on Spotify's service.   And Plaintiff seeks to represent a putative class of

8  individuals whose mechanical rights were allegedly violated.

9       But "copyright claims are poor candidates for class-action treatment."

10 *Football Assoc. Premier League Ltd. v. YouTube. Inc.*, 297 F.R.D. 64, 65

11 (S.D.N.Y. 2013).   Because each putative class member's claim of copyright

12 infringement requires numerous legal and factual inquiries specific to *each and*

13 *every one* of the compositions at issue, Plaintiff's sweeping class-wide allegations

14 are a "'Frankenstein monster posing as a class action.'" *Id.* (citation omitted).

15      There are three reasons that Plaintiff's complaint fails on its face to satisfy

16 the prerequisites of Federal Rule of Civil Procedure 23.   *First*, Plaintiff has

17 proposed an improper "fail-safe" class. The proposed class definition parrots the

18 elements of copyright infringement.  Thus, membership in the class is circular

19 because it largely equates with liability.  Under Plaintiff's class definition, any

20 putative class member against whom Spotify successfully defends itself would

21 automatically drop out of the class and not be bound by the result.  That sort of

22 "heads-I-win, tails-you-lose" result is precisely what the well-established

23 prohibition on fail-safe classes is meant to avoid.

24      *Second*, Plaintiff's proposed class is not ascertainable.  There is simply no

25 way to determine who qualifies as a class member without first determining the

26 thorny and often intractable threshold questions of (1) *who owns* the mechanical

27 rights to any given composition in the first place, assuming the composition itself

28 can be identified at the outset; and (2) whether Spotify has reproduced or

1

distributed those compositions without license or authorization (which requires a separate set of additional inquiries).  Making these determinations requires the sort of mini-trial on the merits that precludes feasible identification of class members.  And a "class action [becomes] unmanageable virtually by definition" when "determining class membership under Plaintiff's definition essentially requires resolving the merits of each individual's claim."  *Tidenberg v. Bidz.com*, 2010 WL 135580, at *3 (C.D. Cal. Jan. 7, 2010).

*Third*, this lawsuit lacks the commonality that Rule 23(a)(2) requires for certification of any class.  The alleged "common questions" are not in fact common; they will yield individualized and fact-intensive answers not just for each putative class member, but for *every possible musical composition* at issue.  The composition-by-composition inquiries that would be required include, for example:

- determining the ownership of the asserted mechanical rights;
- the validity of the copyright registration;
- whether Spotify had an express or implied license to reproduce and/or distribute the work;
- whether and how the work was reproduced and/or distributed by Spotify;
- whether, if there were an infringement, that infringement was willful; and
- what damages, if any, are appropriate.

But even if Plaintiff could surmount these three independent obstacles to class treatment, his bid for class certification fails on the pleadings because it is apparent that he cannot satisfy either Rule 23(b)(3)'s requirements for a damages class action or Rule 23(b)(2)'s standards for an injunction-only class action.

To certify a damages class action under Rule 23(b)(3), a plaintiff must show *both* that common issues predominate over individual ones and that the class device is a superior method of adjudicating the claims at issue.  Neither test is met here.  Plaintiff's allegations fail the predominance requirement because any purportedly common issue or issues would be overwhelmed by the types of

2

individualized merits inquiries mentioned above and that we explain in detail below.   The proposed class likewise fails to meet Rule 23(b)(3)'s superiority requirement; a class action is not superior to other methods of adjudication when, as here, determining each putative class member's right to recovery would require a mini-trial on multiple fact-bound issues specific to each and every composition.

Plaintiff's proposed class also cannot be certified as a Rule 23(b)(2) injunctive class action.  Rule 23(b)(2) certification is improper when, as here, a plaintiff seeks predominantly monetary relief.  Moreover, certification under Rule 23(b)(2) is precluded for the basic reason that injunctive relief—let alone the single injunction providing uniform class-wide relief that Rule 23(b)(2) requires—is unavailable here as a matter of law because the copyright laws authorize individual plaintiffs to recover statutory or actual damages for any infringement.

For these reasons, it is readily apparent from the face of the Complaint that Plaintiff's proposed class cannot be certified.  As this Court twice recognized last year, it is "appropriate to strike class allegations prior to discovery where the allegations make it obvious that classwide relief is not available." *Am. W. Door & Trim v. Arch Specialty Ins. Co.*, 2015 WL 1266787, at *8 (C.D. Cal. Mar. 18, 2015) (O'Connell, J.); *Stokes v. Citimortgage, Inc.*, 2015 WL 709201, at *4 (C.D. Cal. Jan. 16, 2015) (O'Connell, J.). The allegations here fit that same mold. Accordingly, the Court should strike the class allegations now, before it and the parties incur the substantial burdens associated with a putative class action.

## BACKGROUND

Spotify is an interactive commercial music streaming service.  Compl. ¶ 14.[1] Through its website (www.spotify.com) and desktop, mobile, and other

---

[1]     At this stage, the Court must treat as true any well-pleaded factual allegations in the Complaint. *See, e.g.*, *In re 2TheMart.com, Inc. Secs. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). But this "tenet" "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, this description of Spotify is drawn from those allegations—which Spotify reserves the right to contest at the appropriate time.

3

applications, Spotify permits its users to stream music from Spotify's "library of 'millions of tracks.'" *Id.* ¶ 16. Plaintiff alleges that Spotify knowingly and willfully infringes his and others' rights in copyrighted musical works by failing to obtain licenses for the musical works that it distributes or reproduces and by failing to pay royalties. *Id.* ¶¶ 2-3, 20-24. He asserts claims for violations of federal copyright law, 17 U.S.C. §§ 106 & 501. *See* Compl. ¶¶ 33-42.[2]

Plaintiff seeks to represent a putative class of "[a]ll owners of mechanical distribution and reproduction rights in musical compositions registered under United States federal law, which compositions were reproduced or distributed by Spotify without license or authorization since December 28, 2012." *Id.* ¶ 26. He seeks statutory damages, actual damages, declaratory and injunctive relief, restitution, and attorneys' fees and costs. *Id.* at 11-12 (Prayer for Relief).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(f), the Court may strike from a pleading any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 23(c)(1) requires courts to determine "at an early practicable time" whether the proposed class satisfies class-certification requirements, and Rule 23(d)(1)(D) allows the Court to "require that the pleadings be amended to eliminate allegations about representation of absent persons."

As this Court has explained on multiple occasions, under Rules 23 and 12(f) "[i]t is thus appropriate to strike class allegations prior to discovery where the allegations make it obvious that classwide relief is not available." *Am. W. Door & Trim*, 2015 WL 1266787, at *8; *Stokes*, 2015 WL 709201, at *4 (same); *accord, e.g.*, *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982) ("the issues . . . [may be] plain enough from the pleadings to determine whether the interests of the absent

---

[2] Plaintiff also asserted a claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.,* but Plaintiff has withdrawn that claim. *See* Joint Stipulation To Dismiss With Prejudice Count Two of the Complaint, filed Feb. 12, 2016 (Dkt. 23).

parties are fairly encompassed within the named plaintiff's claims"); *Route v. Mead Johnson Nutrition Co.*, 2013 WL 658251, at *8 (C.D. Cal. Feb. 21, 2013) (holding that "a court may strike class allegations" when "the matter is sufficiently obvious from the pleadings"); *Hovsepian v. Apple, Inc.*, 2009 WL 5069144, at *2 (N.D. Cal. Dec. 17, 2009) ("[T]his Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained.").

Courts exercise that authority when "it is evident from the allegations in the complaint" that a class action "cannot be maintained." *Mata v. CitiMortgage, Inc.*, 2012 WL 7985175, at *1 (C.D. Cal. July 20, 2012); *accord, e.g.*, *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009). "[I]t is procedurally proper to strike futile class claims at the outset of litigation to preserve time and resources." *Stearns v. Select Comfort Retail Corp.*, 2009 WL 4723366, at *14 (N.D. Cal. Dec. 4, 2009); *see also Hovsepian*, 2009 WL 5069144, at *2, *6 ("'function of a 12(f) motion to strike is avoid the expenditure of time and money that must arise from litigating spurious issues'") (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)).

## ARGUMENT

### I.    The Proposed Class Is An Impermissible Fail-Safe Class.

The proposed class definition suffers at the outset from a fatal defect: it is an impermissible "fail-safe" class. "[A] class definition is impermissible where it is a 'fail-safe' class, that is, a class that cannot be defined until the case is resolved on its merits." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012). A "fail-safe" class definition "includes only those who are entitled to relief. Such a class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those class members win, or by virtue of losing, they are not in the class and are not bound." *Id.* (internal citations and emphasis omitted). As the Ninth Circuit has observed, "obvious problems . . .

5

1  exist when the class itself is defined in a way that precludes membership unless the

2  liability of the defendant is established." *Kamar v. RadioShack Corp.*, 375 F.

3  App'x 734, 736 (9th Cir. 2010). That is because "when the class is so defined,

4  once it is determined that a person, who is a possible class member, cannot prevail

5  against the defendant, that member drops out of the class." *Id.* Such a result "is

6  palpably unfair to the defendant, and is also unmanageable—for example, to whom

7  should the class notice be sent?" *Id.*; *see also Heffelfinger v. Elec. Data Sys.*

8  *Corp.*, 2008 WL 8128621, at *10 (C.D. Cal. Jan. 7, 2008) ("[P]laintiffs now seek

9  to define the class in terms of workers who were denied overtime in violation of

10  the law. A class defined in this fashion constitutes an impermissible 'fail-safe'

11  class, whose members would be bound only by a judgment favorable to plaintiffs

12  but not by an adverse judgment." (quotation marks omitted)); *cf. Tidenberg*, 2010

13  WL 135580, at *3 (when "determining class membership under Plaintiff's

14  definition essentially requires resolving the merits of each individual's claim," that

15  "by itself renders the class action unmanageable virtually by definition . . . and

16  makes Plaintiff's class definition unacceptable").

17      Here, Plaintiff's proposed class is the archetypical fail-safe class. The

18  putative class is defined to include "all owners of mechanical distribution and

19  reproduction rights in musical compositions registered under United States federal

20  law, which compositions were reproduced or distributed by Spotify *without license*

21  *or authorization* since December 28, 2012." Compl. ¶ 26 (emphasis added).

22  These criteria essentially state elements of a copyright claim that are the *sine qua*

23  *non* of liability, and if Spotify prevails with respect to a particular plaintiff by

24  showing that it possessed a license or authorization, that person would simply be

25  excluded from the class.

26      When, as here, the proposed class definition is incurably flawed because it

27  alleges a "fail safe class," this Court should strike the Plaintiff's class allegations.

28  *See Tidenberg*, 2010 WL 135580, at *3 (rejecting class definition that "essentially

6

1    requires resolving the merits of each individual's claim that he or she was
2    defrauded"); *Kissling v. Ohio Casualty Ins. Co.*, 2010 WL 1978862, at *2 (E.D.
3    Ky. May 14, 2010) ("because the proposed class is a fail-safe class which is fatally
4    flawed, the Court may dismiss the class allegations at the pleading stage, prior to a
5    motion for class certification").

6    **II.    The Proposed Class Is Not Ascertainable.**

7           The Court should strike the class allegations for the additional reason that
8    the proposed class is not ascertainable. *See Deitz v. Comcast Corp.*, 2007 WL
9    2015440, at *8 (N.D. Cal. July 11, 2007) ("Courts have held that the class must be
10   adequately defined and clearly ascertainable before a class action may proceed.").
11   A class is ascertainable only "if its members can be identified by reference to
12   objective criteria." *Red v. Kraft Foods, Inc.*, 2012 WL 8019257, at *3 (C.D. Cal.
13   Apr. 12, 2012); *see also, e.g.*, *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d
14   1075, 1089 (N.D. Cal. 2011) (citing *In re IPO Sec. Litig.*, 471 F.3d 24, 30 (2d Cir.
15   2006)). In addition, the method of identification must be reliable and
16   administratively feasible. *In re Flash Memory Antitrust Litig.*, 2010 WL 2332081,
17   at *14 (N.D. Cal. June 9, 2010) (a class definition must be "definite enough so that
18   it is administratively feasible for the court to ascertain whether an individual is a
19   member."); *accord* 7A Charles Alan Wright et al., Fed. Prac. & Proc. § 1760.

20          Although not explicitly discussed in Rule 23, ascertainability is a
21   fundamental prerequisite to class certification; "[w]ithout an objective, reliable
22   way to ascertain class membership, the class quickly would become
23   unmanageable." *Xavier*, 787 F. Supp. 2d at 1089; *see also Brazil v. Dell Inc.*, 585
24   F. Supp. 2d 1158, 1167 (N.D. Cal. 2008) ("To determine who should be a member
25   of these classes, it would be necessary for the court to reach a legal determination
26   [on the merits]. Thus, the proposed class cannot, as alleged, be presently
27   ascertained." (citations omitted)).

28          Courts in this Circuit have not hesitated to strike class allegations where the

7

complaint on its face shows that class membership is not readily ascertainable. *See, e.g.*, *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1152 (N.D. Cal. 2010) (striking class allegations because the putative class "is not ascertainable"); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1147 (N.D. Cal. 2010) (same); *Hovsepian*, 2009 WL 5069144, at \*6 (same); *Brazil*, 585 F. Supp. 2d at 1167.

Here, even before reaching the individualized inquiries concerning liability, several highly fact-intensive inquiries must be performed simply to identify owners of registered musical works implicated in this action. *See Jim Marshall Photography, LLC v. John Varvatos of Cal.*, 2013 WL 3339048, at \*6 (N.D. Cal. June 28, 2013) ("'A determination of copyright ownership is a conclusion of law based on underlying facts.'") (quoting *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 484 (1st Cir. 1985)).

For starters, Plaintiff has not identified the works that are the subject of the alleged infringement, nor has he identified a methodology for doing so. Tellingly, he does not even offer a complete list of *his own* works as to which he claims infringement: he provides the name and copyright registration information for only four of those works (Compl. ¶ 23), then says that these four constitute a "non-exhaustive" list. Yet he offers the Court no assistance in determining whether any of the approximately 150 other works (that he indicates he owns) belong on that list.

More important, even if Plaintiff had identified the compositions relating to absent putative class members that he believes are relevant to this lawsuit, it is inconceivable that he could generate accurate ownership information for each composition. That is so because there is no comprehensive database of information reflecting a variety of factors that affect ownership, such as: co-ownership; transfers; assignments; death of an owner; and exercise of reclaim and reversion rights. And even to the extent that ownership information seems

8

available—whether in the records maintained by the Copyright Office or some other source—that information is often incorrect or inconclusive. *See, e.g.,* United States Copyright Office, *Copyright and the Music Marketplace, A Report of the Register of Copyrights*, Feb. 2015, available at http://copyright.gov/policy/musiclicensingstudy/copyright-and-the-music-marketplace.pdf (Stillman Decl. Ex. 1), at 123 ("Based on the record in this proceeding, there can be little doubt that the current music licensing landscape is severely hampered by the lack of publicly accessible, authoritative identification and ownership data") (citing, among other sources, comments of the National Music Publishers' Association).  As the Copyright Office has explained:

> [T]here is a lack of comprehensive and reliable ownership data, particularly for musical works. . . . [I]t is difficult to identify and keep track of musical work ownership due to changes when musical works and catalogs change hands.  Further complicating the situation is that the rights to musical works are often split among multiple songwriters, with differing publishers and [performing rights societies], making musical work data harder to track and maintain.

*Id.* at 123-124.  And even where accurate ownership information as to the work itself is known, that would not necessarily be sufficient here, where the class is defined to include owners of the specific "mechanical distribution and reproduction rights in musical compositions."  Compl. ¶ 26.  It would not be enough to identify the owner of the work (assuming that's possible); as the Copyright Office explains, a further inquiry would have to be made as to whether the individual copyright interests with respect to these specific rights have been divided and transferred.

Plaintiff posits a potential solution to this issue by alleging that class members can be "readily ascertained from Spotify's database files and records, and via discovery in this action." Compl. ¶ 28.  But for the reasons we have explained, the lack of available—let alone reliable—ownership information for copyrighted

9

musical works is widely recognized as an intractable problem in the music industry, and so that is wishful thinking. Indeed, elsewhere in his own complaint, Plaintiff himself recognizes that "Spotify may not be able to identify the copyright owners from the sound recordings provided to Spotify" (*id.* at ¶ 24).[3] Nor would Plaintiff or the Court fare any better—there is no indication that Plaintiff will ever be able to provide the Court with a list of class members.

Indeed, even before confronting the difficulties of identifying the owner of a given musical work, the *work itself* must first be identified. But "digital music files often do not include the standard identifiers for the copyrighted works the files embody." *Copyright and the Music Marketplace, supra,* at 123. While digital recordings may have standard *sound recording* identifiers, "there is no comprehensive publicly accessible database that can be used to match" the standard identifying codes of a *sound recording* to a *musical work* (and vice versa). *Id.* Thus, having a list of sound recordings streamed on Spotify's service is not enough for Plaintiff or the Court (or, for that matter, Spotify) to identify the corresponding underlying musical works, let alone their owner(s). Just one of the many difficulties that arise is when multiple songs have the same name. For example, if the list includes a recording called "Hello," that is not enough to figure out if the composition on the recording is the megahit by Adele, the classic by Lionel Richie, or other songs called "Hello" by Evanescence, Ice Cube, and many others. Would "California Girls" mean the song by the Beach Boys or the Katy Perry hit? Would "One" refer to the song by U2, the show tune from A Chorus Line, or one of many others, including hits by the Bee Gees and Metallica? On the

---

[3]   *See also* Compl. Ex. C page 25, "Comments of Spotify USA Inc." in Response to United States Copyright Office Notice of Inquiry: Music Licensing Study: Notice and Request for Pubic Comment, Docket No. 2014-03 ("Identifying and locating the co-authors of each of millions of copyrighted musical works is a daunting task that is hampered significantly by, among other things, the lack of a modern and publicly searchable database identifying the current owners of musical works and the contact information for such copyright owners.").

other hand, which of these are the same composition as John Legend's "All of Me": "All of Me (Instrumental)"; "All of Me – Solo Piano"; "All of Me – UK Radio Remix Edit"; "All of Me (Bumper's Audition) – From 'Pitch Perfect 2' Soundtrack"?

The recent dispute over the validity of the copyright and ownership in the song *Happy Birthday* (one of the most famous songs in history) is a powerful illustration of the challenges here. In *Marya v. Warner/Chappell Music, Inc.* (and for decades prior to that litigation), Warner/Chappell claimed a copyright in the song, contending that the original authors, who wrote the song around the turn of the last century, held onto the common law rights for decades, and then transferred them to its predecessor-in-interest publishing company, which registered the copyright in 1935. 2015 WL 5568497, at *2 (C.D. Cal. Sept. 22, 2015). The plaintiff argued that the registration was invalid, contending that the lyrics may have been written by someone else, that the common law rights were lost due to general publication or abandonment before registration, and that the rights were never transferred from the authors to the publishing company. *Id*. at *5. After extensive discovery, briefing, and argument, the court ruled on summary judgment that Warner/Chappell's predecessor-in-interest never acquired the rights to the song, and therefore Warner/Chappell does not own a valid copyright to it. *Id*. at *20. Further complicating matters, however, a charitable organization with ties to the original songwriters intervened in the case on the heels of that ruling, claiming that *it* was the rightful owner. Mem. in Supp. of Unopposed Mot. to Intervene, Dkt. No. 266-1, *Marya v. Warner/Chappell Music, Inc.*, No. 2:13-cv-04460 (Nov. 9, 2015), available at 2015 WL 7312632. The parties subsequently agreed to settle—after two-and-a-half years of litigation over this one song. The result (if the settlement is approved): the song will enter the public domain. *See* Joint Status Report, Dkt. No. 294, *id*.

*Marya* involved just a *single* song. By contrast, many more compositions

11

are allegedly in play here; plaintiff alleges that thousands are at issue.  Thus, merely determining class membership here would be entirely unmanageable—it would be like litigating variations of the *Happy Birthday* case thousands of times over.  Nowhere in the Complaint does Plaintiff suggest how he, the Court, and the jury will overcome these fundamental obstacles when the entire industry has largely been unable to do so.[4]  It is apparent that the proposed class is unascertainable.

## III.   The Putative Class Does Not Satisfy Rule 23(a)(2).

All four "prerequisites" of Rule 23(a) must be satisfied before a class action of any sort may be certified.  Plaintiff's allegations make clear that his lawsuit flunks the commonality requirement of Rule 23(a)(2), which requires that he show "questions of law or fact common to the class."  The Supreme Court has explained that this requirement "is easy to misread, since '[a]ny competently crafted class complaint literally raises common questions.'"  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Whether a practice is "unlawful" may in literal terms present a common question, for instance, but the Rule 23(a)(2) commonality test is not satisfied simply by "the raising of [such] common questions—even in droves."  *Id.*  Rather, "[w]hat matters" for Rule 23(a) commonality is "*the capacity of a classwide proceeding to generate common answers apt to drive resolution of the litigation*."  *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (2009)) (emphasis added).  For there to be "common answers," the claims of the putative class must depend upon a "common contention" whose "truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke."  *Id.*

---

[4]    *See Copyright and the Music Marketplace, supra,* at "Acknowledgements" (noting that the report was prepared following "an exhaustive analysis of industry practices and considerable dialogue with music creators and the businesses that represent and invest in their interests, as well as music services and distributors and other interested parties.").

### A.    Plaintiff's Allegations Are Incapable Of Class-Wide Resolution.

The Court need look no further than Plaintiff's alleged "common questions" (Compl. ¶ 31) to see that no such common answers could possibly be generated here.  These questions are fundamentally incapable of class-wide resolution: they cannot generate "common answers" without an individual trial with respect to each *musical work*, let alone each potential class member.

### 1.    Whether A Work Has A Valid Copyright Registration

Plaintiff's first proposed "common question" is "[w]hether Spotify reproduced or distributed or otherwise exploited via its service registered musical compositions without first obtaining a license or other required authorization." (Compl. ¶ 31(A)).  This question assumes that analyzing whether a musical work has a valid copyright is a simple administrative task.  Not so.  Rather, a jury would have to undertake a fact-intensive inquiry with respect to each and every work, even when registration information is available from the Copyright Office (which is often not the case).  As the Copyright Office itself cautions:

> Copyright investigations often involve more than one of these [three primary] methods [including searching the Copyright Office catalogs and other records].  Even if you follow all three approaches, the results may not be conclusive.  Moreover . . . the changes brought about under the Copyright Act of 1976, the Berne Convention Act of 1988, the Copyright Renewal Act of 1992, and the Sonny Bono Copyright Term Extension Act of 1998 must be considered when investigating the copyright status of a work. . . . In many cases, it is important to consult with a copyright attorney before reaching any conclusions regarding the copyright status of a work.

United States Copyright Office Circular 22, *How to Investigate the Copyright Status of a Work*, available at http://www.copyright.gov/circs/circ22.pdf (Stillman Decl. Ex. 2).  The Office's records "cannot be regarded as conclusive in all cases" (*id.* at 3) for many reasons, including, but not limited to, the inability to track all assignments, co-ownership agreements, and reversion rights (*i.e.*, when a license or transfer of certain rights in a copyrighted work expires or is terminated such that

13

those rights revert back to the grantor, or the grantor's heirs). *See*, United States Copyright Office, *Termination of Transfers and Licenses Under 17 U.S.C. §203*, available at http://www.copyright.gov/docs/203.html (Stillman Decl. Ex. 3).

Moreover, as the Copyright Office acknowledges, even if the registration information were up to date, it does not account for the patchwork of regulations and formalities created by the four copyright statutes mentioned above that will impact the copyright status of a given work based on date of publication, date of registration, notice requirements, renewals, and where in the world the work was originally published.   The following are just a few examples of how these regulations impact the validity of a copyright (*even if* the work is registered):

- Any composition created between 1923 and 1977 that was first published without notice is automatically in the public domain, due to failure to follow copyright formalities under the then-governing law.  17 U.S.C. § 10 (1958); 17 U.S.C. § 10 (1964).

- Works that were first published without notice between 1978 and March 1, 1989 and not registered within five years after publication are also in the public domain due to failure to follow required formalities.  17 U.S.C. § 405.

- Works published between 1923 and 1963 that were published with the requisite notice, but for which the copyright was not properly renewed, are in the public domain due to failure to renew the copyright term.  17 U.S.C. § 24 (1958); 17 U.S.C. § 24 (1964).

- Works initially published abroad without notice and in the public domain in the source country as of January 1, 1996 are in the public domain in the United States, due to failure to meet the requirements for copyright restoration.  17 U.S.C. § 104A.

- Works first published after March 1, 1989 in a country that does not have a copyright treaty relationship with the United States, and authored by people who are citizens of such a country, are in the public domain in the United

14

States, unless there has been a Presidential proclamation concluding that the other country adequately protects United States works.  17 U.S.C. § 104. Again, Judge King's recent decision in *Marya* illustrates how these complexities can play out for any given song.  As noted above, the plaintiff had argued that the common law rights in the song *Happy Birthday* were lost due to, among other reasons, general publication or abandonment before registration.   2015 WL 5568497, at *8-13.    And the court ultimately ruled—after extensive fact discovery—that the resolution of these issues would have required a further jury trial but for the court's determination that Warner/Chappell did not own a valid copyright to the song on other grounds (because its predecessor-in-interest never acquired the rights to the song in the first place). *Id*. at *13-19.  As *Marya* and the examples above show, even the resolution of this issue (whether a particular musical composition has lost copyright protection despite registration) will require extensive factual investigation with respect to each and every musical work.

### 2.      Whether Spotify Has a License or Authorization To Distribute Any Particular Composition

Whether Spotify had a license or other form of authorization to reproduce, distribute, or otherwise exploit any specific musical composition requires multiple factual as well as legal inquiries, all of which are highly individualized.  This analysis first requires an inquiry into whether the song was expressly licensed, which can be done through any one of a number of available mechanisms. These include controlled composition license from a record label (whereby the record label distributing the recording also has the right to pass along the mechanical license to the underlying composition); direct blanket license by a publisher or its representative, such as the Harry Fox Agency;[5] and the compulsory license

---

[5]      *See* http://www.harryfox.com/publishers/what_does_hfa_do.html (Stillman Decl. Ex. 4) ("HFA is the leading provider of rights management, licensing, and royalty services for the U.S. music industry and was established in 1927 by the National Music Publishers' Association (NMPA) as an agency to license,
(cont'd)

1   mechanism provided by Section 115 of the Copyright Act. 17 U.S.C. § 115.[6]
2   Assessing whether an effective license was secured for any individual song
3   through any of these means may require third-party testimony and other evidence
4   from the licensor, and may require an analysis of individual Section 115 notices of
5   intent.

6          In addition, even if there is no evidence of an express license, there may well
7   be circumstances supporting an implied license with respect to any given song.
8   For example, a copyright owner's *knowledge of and acquiescence in* a defendant's
9   use of his copyrighted material is a basis for an implied license. *See Keane Dealer*
10  *Servs., Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997) ("[K]nowledge . . .
11  coupled with [plaintiff's] silence in the face of [defendant's] use" of copyrighted
12  material constituted implied license); *Field v. Google Inc.*, 412 F. Supp. 2d 1106,
13  1115-16 (D. Nev. 2006) (same); *see also Effects Assocs., Inc. v. Cohen*, 908 F.2d
14  555, 558  (9th Cir. 1990) (explaining that nonexclusive licenses may "'be implied
15  from conduct'") (quoting 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright*
16  § 10.03[A] (1989)).  Here, it is certainly the case that some absent members of the
17  putative class knew that Spotify was distributing compositions on its service for a
18  long time, but did not request that those works be removed from the service.  (And
19  there are many reasons—from economic benefits to marketing and exposure on
20  one of the world's most popular digital music services—why an absent class
21  member could have wanted Spotify to make his songs available).

22         This defense might apply to the Plaintiff himself, who declares that he is a
23  prolific, well-known and critically acclaimed songwriter and recording artist
24  (Compl. ¶ 9), who also teaches at the college level and uses social media to discuss
25  issues regarding digital music licensing.  Indeed, Lowery runs a blog "examin[ing]
26  collect, and distribute royalties on behalf of musical copyright owners.").

27  [6]     Section 115 provides a compulsory license to make and distribute
28  phonorecords of musical works.  The license is obtained by sending a notice of
    intention to the copyright owner, and paying certain prescribed royalties.

Artists' Rights in the digital age." *See* http://www.davidlowerymusic.com/bio-photos (Stillman Decl. Ex. 5).  It is implausible that Plaintiff was unaware that Spotify was streaming his songs, and was unaware that there was a simple way to claim his songs and any royalty payments that might be owed.  *See* https://www.spotify.com/us/legal/copyright-policy/?lang=en (Stillman Decl. Ex. 6).  There is a powerful argument that his failure to contact Spotify to request removal from the service constitutes acquiescence that forms a basis for an implied license.  At the very least, whether there is such an implied license is a mixed issue of law and fact that would have to be tried not only with respect to Lowery himself but also with respect to *each* and *every* absent member of the putative class—and with respect to *each* and *every* allegedly infringed song.

Even where a finding is made that no license exists for a particular song, further factual and legal determinations would be required, including whether there was an "act" of infringement.  Not all songs are used the same way on Spotify's service; for many songs, it may be that no user has ever requested that the song be streamed.  In such a circumstance, it would be difficult for an absent class member to show that Spotify reproduced, distributed, or otherwise "exploited" the song. Even with respect to songs that have been streamed by users, it is not clear as a matter of law that such activity constitutes a reproduction or distribution that requires a license (apart from a licensed performance).  *See Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121, 127-33 (2d Cir. 2008). (There is no allegation that Spotify lacks licenses for performance rights of the songs at issue.)

And another set of sub-questions would have to be answered in order to determine whether Spotify's use of any particular song constitutes a violation of the Copyright Act.  There are several affirmative defenses to infringement on which Spotify may rely, including (but not limited to) fair use and *de minimis* use. Each of these would require an individualized inquiry.

### 3.        Whether Spotify "Made Accurate Royalty Payments"

Next, Plaintiff wrongly contends that whether Spotify "made accurate royalty payments" (Compl. ¶ 31(D)) is a common question.  To the contrary, that question could be answered, if at all, only on an individual song-by-song basis, and only after a detailed investigation into the streaming history and licensing circumstances of that song, as well as an accounting audit with respect to that song. That task will be daunting—if not impossible—as it will require individualized inquiry into the royalty payments for each song.

### 4.        The Basis and Method for Determining and Computing Damages

Plaintiff's *own allegations* anticipate the need for individualized inquiry into the appropriate damages analysis for each and every class member right up until final judgment.  Plaintiff alleges that "Plaintiff and Class Members are entitled to the maximum statutory damages or to their actual damages and Defendant's profits, whichever are higher," and that "Plaintiff and Class Members will elect whether or not to seek statutory damages prior to final judgment."  (Compl. ¶ 37.) Plaintiff also alleges that the "claims of the individual members of the class may range from smaller sums to larger sums, depending upon the number of infringements."  (*Id.* ¶ 32.)  All of these are individualized, not common, questions.

Even if Plaintiff decided to seek only statutory damages on behalf of the proposed class in an effort to elide variations among actual damages amounts, that would not solve the problem. The Copyright Act provides for a range of statutory damages, to be determined "as the court considers just."  17 U.S.C. § 504(c)(1). The factors that a court must evaluate in order to determine the correct amount— per infringed work—include: (i) the expenses saved and the profits reaped by the infringers; (ii) revenues lost by the owner of the work; and (iii) the value of the copyright. *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.*, 807 F.2d 1110, 1117 (2d Cir. 1986).  "In measuring the damages, the court is to be guided by what is

18

just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like . . . ." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (quotation marks omitted).  In the context of copyrighted music, courts often focus on the royalties that the infringer avoided paying.  *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1102-03 (N.D. Cal. 2003).  As Plaintiff concedes, this amount could vary for each work, and might depend upon the number of copies made. (Compl. ¶ 32.)

Similar issues would arise in the calculation of actual damages. Determining actual damages requires a factual inquiry into the "extent to which the market value of the copyrighted work at the time of the infringement has been injured or destroyed by the infringement." *Fitzgerald*, 807 F.2d at 1118 ("Failure to apply this measure in weighing actual damages requires reversal").  As for profits, "computations of gross revenues, expenses and profits present questions of fact." *In-Design v. K-Mart Apparel Corp.*, 13 F.3d 559, 563 (2d Cir. 1994), *overruled on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) (citing *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 409 (1940)).  All of these factors indicate that the availability and amount of statutory or actual damages will vary on a work-by-work basis, making this case inappropriate for class treatment.

### 5.    Willful Infringement

Plaintiff proposes that "willfulness" is a common question. (Compl. ¶ 31(C).)  To the contrary: assuming *arguendo* that any infringement is found with respect to any given musical composition, the question of whether that infringement was committed willfully will also have to be addressed on an individualized basis.  "To prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." *Louis Vuitton Malletier, S.A. v.*

19

*Akanoc Solutions, Inc.*, 658 F.3d 936, 944 (9th Cir. 2011) (quoting *Island Software & Computer v. Microsoft, Inc.*, 413 F.3d 257, 263 (2d Cir. 2005)) (internal quotation marks omitted).  As noted above, the circumstances surrounding the use and licensing of musical compositions on the Spotify service are not uniform, and therefore even in the event that an incident of infringement were found (after the requisite individualized inquiry) with respect to one or more works, the elements of willfulness will require individual factual determinations as well.  *See United Fabrics Int'l, Inc. v. G-III Apparel Grp., Ltd.*, 2013 WL 7853485, at *6 (C.D. Cal. Dec. 27, 2013) (summary judgment inappropriate where "genuine issues of material fact remain with respect to whether Defendants' infringement… was willful"); *Henley v. DeVore*, 733 F. Supp. 2d 1144, 1165 (C.D. Cal. 2010) (because the "willfulness issue turns on whether the Defendants had a good faith belief that their use constituted fair use and whether that belief was reasonable," summary judgment was inappropriate in light of conflicting evidence).  *See also Premier League*, 297 F.R.D. at 65-66 (S.D.N.Y. 2013) (while "[t]he nature of [the] legal requirements and analyses" for copyright claims seeking class treatment may be similar, "that merely identifies some of the issues, each of which must be resolved upon facts which are particular to that single claim of infringement, and separate from all the other claims").

### B.   In Light Of These Individualized Inquiries, Rule 23 And Due Process Prohibit Certification Of Plaintiff's Proposed Class.

Spotify is entitled to an opportunity to litigate any ownership, validity, or other issues that may defeat an infringement claim as to any individual composition.  As the Supreme Court has held, "a class cannot be certified" if the defendant "will not be entitled to litigate its . . . defenses to individual claims." *Dukes*, 131 S. Ct. at 2561 (2011).  Instead, "[d]ue process requires that there be an opportunity to present every available defense." *Lindsey v. Normet*, 405 U.S. 56, 66 (1972).  After all, the "fundamental requisite of due process of law is the

1  opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914).

2      Plaintiff offers no explanation in the Complaint as to how any of these
3  allegedly "common" questions could be resolved through common answers, and
4  instead offers only the bald conclusion that these questions "do not vary from class
5  member to class member"—a conclusory assertion that is belied by the
6  Complaint's own allegations.   There simply is no one-size-fits all answer
7  applicable to the musical works that were allegedly reproduced and/or distributed
8  (or, in some cases, *not* reproduced or distributed) by Spotify over the past three
9  years.   These sorts of purportedly "common questions" are not genuinely
10  "common," and therefore have no capacity to drive the class-wide resolution of
11  this case.

12      Indeed, it is because of these highly individualized factual and legal inquiries
13  that, "[g]enerally speaking, copyright claims are poor candidates for class-action
14  treatment."  *Premier League.*, 297 F.R.D. at 65; *see also Authors Guild v. Google,*
15  *Inc.*, 721 F.3d 132 (2d Cir. 2013); *In re Literary Works in Electronic Databases*
16  *Copyright Litig.*, 654 F.3d 242 (2d Cir. 2011); *Wu v. Pearson Educ. Inc*., 2012 WL
17  6681701 (S.D.N.Y. Dec. 21, 2012); *Resnick v. Copyright Clearance Ctr., Inc.*,
18  2003 WL 22176619 (D. Mass. Sept. 22, 2003); *WB Music Corp. v. Rykodisc, Inc.*,
19  1995 WL 631690 (E.D. Pa. Oct. 26, 1995); *Angel Music Inc. v. ABC Sports, Inc.*,
20  112 F.R.D. 70 (S.D.N.Y. 1986) (granting motion to dismiss class allegations).

21      As the court explained in *Premier League*, most issues in a copyright
22  infringement claim—such as "ownership," "authorization," and "knowledge or
23  awareness of the infringing action"—"must be resolved upon facts which are
24  particular to that single claim of infringement, and separate from all the other
25  claims."  297 F.R.D. at 65-66.  "Thus, accumulation of all the copyright claims,
26  and claimants, into one action will not simplify or unify the process of their
27  resolution, but multiply its difficulties over the normal one-by-one adjudications of
28  copyright cases."  *Id.* at 66.  The same is true here.

1   Plaintiff may seek to rely on a recent decision by another judge of this Court
2   granting class certification in a copyright case.  But that decision, *Flo & Eddie,*
3   *Inc. v. Sirius XM Radio, Inc.*, 2015 WL 4776932 (C.D. Cal. May 27, 2015), is
4   incorrect. But more importantly, it is readily distinguishable.  In *Flo & Eddie*, the
5   court granted certification in a case alleging that defendant Sirius XM performed
6   pre-1972 recordings, in violation of state law, without obtaining licenses from or
7   paying royalties to the owners of the recordings.  But in that case, the court
8   concluded that Sirius had engaged in an undifferentiated, across-the-board
9   approach of not seeking *any* licenses and not paying *any* royalties for pre-1972
10  works.  Given that fact, the court concluded that the central common issue was
11  whether Sirius was correct as a matter of law that no licenses were legally required.
12  *Id.* at *9.  And the court had already ruled on summary judgment prior to class
13  certification that Sirius was incorrect; licenses were legally required.  *Id.* at *3.
14  Moreover, that common question predominated over the individualized issues that
15  are ordinarily attendant to proving copyright ownership—but *only* because (i)
16  Sirius conceded that it possessed a list of all the sound recordings played on the
17  service by name; and (ii) the court found that Sirius made no showing that the
18  rightful owner of the sound recordings would be disputed or that the verification
19  process would be drawn out.  *Id.* at *11, *15-16. The situation here is totally
20  different:  As discussed above (at pp. 8-12, 15, 18), here, unlike in *Flo & Eddie*,
21  developing a reliable list of relevant compositions, copyright owners, and royalty
22  payment histories—if feasible at all—would entail a massive and highly
23  individualized proceeding that prevents class certification.  *See Copyright and the*
24  *Music Marketplace*, *supra*, at 123-124 (noting that "there is no comprehensive
25  publicly accessible database that can be used to match" a sound recording to a
26  musical work, and that "there is a lack of comprehensive and reliable ownership
27  data, particularly for musical works").
28

## IV.   Plaintiff Cannot Establish Predominance And Superiority Under Rule 23(b)(3).

In addition to demonstrating compliance with Rule 23(a), Plaintiff "must satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 131 S. Ct. at 2548. Plaintiff cannot do so here.

Even if Plaintiff were able to identify *any* viable common questions for his putative class, for the reasons just discussed above, individualized issues of law and fact would inevitably overwhelm any such questions. The proposed class therefore flunks Rule 23(b)(3)'s requirements that "questions of law or fact common to class members predominate over" individualized issues and that a class action is "superior to other available methods for fairly and efficiently resolving the controversy." Fed. R. Civ. P. 23(b)(3).

As the Supreme Court has made clear, "the predominance criterion is far more demanding" than "Rule 23(a)'s commonality requirement." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997); *accord Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *Stokes*, 2015 WL 709201, at *8. When, as here, "the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." *Stokes*, 2015 WL 709201, at *8 (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (in turn quoting 7A Charles Alan Wright et al., Fed. Prac. & Proc. § 1778)).

This case cries out for the "separate adjudication[s]" that preclude certification under Rule 23(b)(3). Each of the musical compositions allegedly reproduced or distributed by Spotify without a license or authorization cannot be ascertained without multiple-step factual inquiries. Moreover, even if a list of those compositions were available—tellingly, the Complaint does not suggests any method of generating such a list—mini trials would be required to determine each of the individualized issues detailed above (*see* pp. 13-20, *supra*).

Under such circumstances, neither this Court nor the parties should have to bear the costs and burdens of class action litigation (especially expensive and time-consuming discovery). When, as here, common issues do not predominate over individual questions, the Court should strike the class allegations. *See, e.g.*, *Am. W. Door & Trim*, 2015 WL 1266787, at *8-9 (granting motion to strike on predominance grounds); *Stokes*, 2015 WL 709201, at *8 (same).

Moreover, "when the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication." *Zinser*, 253 F.3d at 1192. Given the need to adjudicate the numerous individualized issues discussed above for each putative class member, class treatment would not be superior here. Rather, "an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried." Fed. R. Civ. P. 23(b)(3), 1966 Adv. Comm. Note.

Finally, a class action is not the superior method of adjudication here for the additional reason that aggregating Plaintiff's claims for statutory damages would be likely to violate Spotify's due process rights by effectively imposing the risk of a "grossly excessive" damages award that is unconstitutionally punitive. As the Second Circuit has noted, the combination of "minimum statutory damages awards . . . with the class action mechanism . . . may expand the potential statutory damages so far beyond the actual damages suffered that the statutory damages come to resemble punitive damages—yet ones that are awarded as a matter of strict liability, rather than for the egregious conduct typically necessary to support a punitive damages award." *Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003) (citing *State Farm Mutual Auto. Ins. Co. v. Campbell,* 538 U.S. 408 (2003) ("The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor."); *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 580 (1996) (noting, in the context of statutory damages, that the "most commonly cited indicium of an unreasonable or

24

excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff.")).  *See also Fraley v. Batman*, 2016 WL 145984, at *1 (9th Cir. Jan. 6, 2016) (mem. disp.) (upholding a class action settlement awarding $15 to each participating class member, and observing that the available statutory damages "award of $750 per claiming class member could implicate due process concerns.").   Those concerns are at their apex in putative copyright class actions, where a single claim of copyright infringement can result in statutory damages ranging from $750 up to *$30,000* (17 U.S.C. § 504(c)(1))—or up to *$150,000* if the infringement was willful (*id.* § 504(c)(2)).  Moreover, "the availability of statutory damages" in these amounts is more than sufficient "to give litigation value to each individual case," which "diminish[es]" any purported "economic need" for class treatment.  *Premier League*, 297 F.R.D. at 66.[7]

## V.   Plaintiff Cannot Certify A Rule 23(b)(2) Injunctive Class Either.

Finally, Plaintiff's class allegations cannot meet the requirements for pleading an injunctive class under Rule 23(b)(2) either.  Rule 23(b)(2) permits certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  It "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."  *Dukes*, 131 S. Ct. at 2557.  As this Court has squarely held, the fact that Plaintiff "seek[s] monetary damages thus

---

[7]    To be sure, the Ninth Circuit has held, in the context of the Fair and Accurate Credit Transactions Act (FACTA), that the potential for enormous statutory damages is generally "not an appropriate reason to deny class certification under Rule 23(b)(3)."  *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 721 (9th Cir. 2010).   But the court left open the possibility that the aggregation of statutory damages in certain circumstances "would warrant denial of class certification."   *Id.* at 723 ("reserv[ing] judgment" on that issue). Moreover, Spotify expressly preserves the argument that, when the potential aggregation of statutory damages in a putative class action threatens disproportionate and excessive liability, the class action device is not superior and Rule 23(b)(3) certification is therefore inappropriate.

renders Rule 23(b)(2) certification inappropriate." *Stokes*, 2015 WL 709201, at *9.[8]  Moreover, because class members in a 23(b)(2) class cannot opt out and thus are not required to receive notice of a pending class action, "Rule 23(b)(2) applies only when a *single injunction* or declaratory judgment would provide relief to each member of the class." *Dukes*, 131 S. Ct. at 2557-58 (emphasis added).

Plaintiff's allegations fail to plead a Rule 23(b)(2) class for an even more fundamental reason: they relate to infringement of musical compositions, as to which—at least under the circumstances of this case—injunctive relief is unavailable as a matter of law because a plaintiff must plead and prove "irreparable" harm.  Specifically, in order to be eligible for a permanent injunction a copyright plaintiff must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay, Inc. v. MercExchanges, LLC*, 547 U.S. 388, 391 (2006); *see also Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995 (9th Cir. 2011) (holding that the *eBay* standard applies to copyright infringement cases); *Salinger v. Colting*, 607 F.3d 68, 77-78 (2d Cir. 2010) (same).

Plaintiff has not and cannot sufficiently plead class-wide irreparable harm. The Ninth Circuit recently recognized that "presuming irreparable harm in a copyright infringement case is inconsistent with, and disapproved by, the Supreme Court's opinion[] in *eBay*."  *Flexible Lifeline*, 654 F.3d at 998.  Because irreparable injury cannot be presumed, the Court would have to evaluate the nature of each individual class member's injury to determine whether it is irreparable.

---

[8]  Certification under Rule 23(b)(1) is plainly impermissible as well.  As the Ninth Circuit has squarely held, Rule 23(b)(1) certification is "not appropriate in an action for damages" because Rule 23(b)(1) "requires more . . . than a risk that separate judgments would oblige [defendant] to pay damages to some class members but not to others." *Zinser*, 253 F.3d at 1193.

1   That alone precludes certification of an injunctive class.  Moreover, in this case, no

2   irreparable injury could be found even on an individual basis: because the

3   copyright laws authorize individual plaintiffs to recover either statutory or actual

4   damages, an adequate monetary remedy is available for any alleged infringement.

5                                              **CONCLUSION**

6          For all of the foregoing reasons, Spotify respectfully requests that the Court

7   enter an order striking the class allegations from the Complaint.

8

9   Dated: February 12, 2016                    **MAYER BROWN LLP**

10                                              By:  */s/ John Nadolenco*_____
                                                        John Nadolenco
11                                                      Eugene Volokh
                                                 350 South Grand Avenue
12                                               Los Angeles, California 90071
                                                 *jnadolenco@mayerbrown.com*
13                                               *evolokh@mayerbrown.com*
                                                 T 213.229.5173
14                                               F 213.576.8133

15                                               A. John P. Mancini (admitted *pro hac vice*)
                                                 Allison Levine Stillman*
16                                               1221 Avenue of the Americas
                                                 New York, New York  10020
17                                               *jmancini@mayerbrown.com*
                                                 *astillman@mayerbrown.com*
18                                               T 212.506.2295
                                                 F 212.849.5895
19
                                                 Archis A. Parasharami*
20                                               Daniel E. Jones*
                                                 1999 K Street, N.W.
21                                               Washington, D.C. 20006
                                                 *aparasharami@mayerbrown.com*
22                                               *djones@mayerbrown.com*
                                                 T 202.263.3328
23                                               F 202.263.5328

24                                               *Pro hac vice application to be filed*

25                                               ***Attorneys for Defendant Spotify USA Inc.***

26

27

28