Sanford L. Michelman (SBN 179702)
smichelman@mrllp.com
**MICHELMAN & ROBINSON, LLP**
10880 Wilshire Blvd., 19th Floor
Los Angeles, CA 90024
Telephone:   (310) 564-2670
Facsimile:    (310) 564-2671

Mona Z. Hanna (SBN 131439)
mhanna@mrllp.com
Melanie Natasha Howard (SBN 250936)
mhoward@mrllp.com
**MICHELMAN & ROBINSON, LLP**
17901 Von Karman Avenue, 10th Floor
Irvine, CA  92614
Telephone:   (714) 557-7990
Facsimile:    (714) 557-7991

David C. Lee (SBN 193743)
dlee@mrllp.com
Ilse C. Scott (SBN 233433)
iscott@mrllp.com
**MICHELMAN & ROBINSON, LLP**
One Post Street, Suite 2500
San Francisco, CA  94104
Telephone:   (415) 882-7770
Facsimile:    (415) 882-1570

*Attorneys for Plaintiffs and Proposed Class*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LOWERY, VICTOR KRUMMENACHER, GREG LISHER, and DAVID FARAGHER, individually and on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>SPOTIFY USA INC., a Delaware corporation,<br><br>Defendant. | Case No.:  2:15-cv-09929-BRO-RAO<br><br>**NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed Concurrently with Declarations of Mona Z. Hanna, Sanford L. Michelman, David C. Lee and [Proposed] Order]<br><br>Date:  May 16, 2016<br>Time: 1:30 p.m.<br>Judge: Hon. Beverly Reid O'Connell |

NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO
CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF

24967

**TO THE COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 16, 2016 at 1:30 p.m., or as soon thereafter as may be heard, in Courtroom 14 of the above-captioned court, located at 312 North Spring Street, Los Angeles, CA 90012, before the Honorable Beverly Reid O'Connell,  Plaintiffs David Lowery, Victor Krummenacher, Greg Lisher, and David Faragher will move, pursuant to Federal Rule of Civil Procedure 23(g), for an order consolidating the related cases and appointing their counsel, Michelman & Robinson, LLP ("M&R"), as interim class counsel, and in the alternative, opposing the motion for appointment of interim class counsel filed by Gradstein & Marzano, P.C., and Susman Godfrey in the related *Ferrick, et al v. Spotify USA, Inc.*, Case No. CV 16-0180-BRO (RAOx) matter.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on February 24, 2016.

This Cross-Motion to Consolidate Related Cases and Appoint Lead Counsel shall be based on this Notice, the Memorandum of Points and Authorities set forth below, the Declarations of Sanford L. Michelman, Mona Z. Hanna and David C. Lee, as well as the pleadings, records and files in this Action, and such other further evidence and argument as may be presented prior to and at the time of the hearing.

Dated:  April 18, 2016          **MICHELMAN & ROBINSON LLP**

By _____
Sanford L. Michelman
Mona Z. Hanna
David C. Lee
Ilse C. Scott
Melanie Natasha Howard
*Attorneys for Plaintiffs and Proposed Class*

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................. 1

II. FACTS ............................................................................................... 4

III. LEGAL ARGUMENT........................................................................ 6

    A.  The Appointment of Michelman & Robinson, LLP As Interim Class Counsel Protects The Interests of The Putative Class............................. 6

        1.  The Legal Standard for Appointing Interim Class Counsel. ......... 6

            a)  M&R Has Undertaken Substantial Pre and Post Complaint Investigation of the Issues in this Litigation........................ 7

            b)  M&R Has Substantial Experience Handling Class Action Lawsuits and the Trial Team Possesses Knowledge of the Applicable Laws at Issue. .................................................. 13

            c)  M&R Has Substantial Resources to Commit To Representing The Putative Class. ...................................... 18

            d)  Other Pertinent Matters to Consider ................................. 19

    B.  The Court Should Specify M&R's Responsibility as Interim Lead Class Counsel. ...................................................................................... 21

IV. CONCLUSION................................................................................. 22

NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO
CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF

24967

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Pipe & Constr. Co. v. Utah,*
    414 U.S. 538 (1974) ...................................................................................1

*Carlin v. DairyAmerica, Inc.*
    2009 WL 1518058 (E.D. Cal. May 29, 2009) .........................................7

*In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. 07-5944 SC
    2008 WL 2024957 (N.D. Cal. May 9, 2008) ........................................18

*Gen. Tel. Co. v. Falcon*
    457 U.S. 147 (1982) ...................................................................................1

*U.S. Parole Comm'n v. Geraghty*
    445 U.S. 388 (1980) ...................................................................................1

*Michelle v. Arctic Zero, Inc.,* No. 12CV2063-GPC NLS
    2013 WL 791145 (S.D. Cal. Mar. 1, 2013)...............................6,8,9,21

*Moradi v. Adelson,* No. 11-CV-00490-GMN-RJJ
    2011 WL 5025155 (D. Nev. Oct. 20, 2011) ...........................................8

*In re Mun. Derivatives Antitrust Litig.*
    252 F.R.D. 184 (S.D.N.Y. 2008) ............................................................7

*Parkinson v. Hyundai Motor Am.,* No. CV06-2553AHS (MLGX)
    2006 WL 2289801 (C.D. Cal. Aug. 7, 2006) .........................................6

*Richey v. Ells,* No. 12-CV-02635-WJM-MEH
    2013 WL 179234 (D. Colo. Jan. 17, 2013) ............................................8

*Steele v. United States,* No. CV 14-1523
    2015 WL 4121607 (D.D.C. June 30, 2015) ...........................................8

*White v. TransUnion, LLC*
    239 F.R.D. 681 (C.D. Cal. 2006) ............................................................6

**Statutes**

Copyright Act (17 U.S.C. §115)...................................................................4,9

Federal Rules of Civil Procedure ("Fed. R. Civ. P")
    Rule 23 .................................................................................................9,12

NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO
CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF

24967

Rule 23(d) ............................................................................................................21

Rule 23(g) ..........................................................................................................6,7

Rule 23(g)(1)(A) ...................................................................................................7

Rule 23(g)(1)(B) ...........................................................................................7,8,19

Rule 23(g)(3) .........................................................................................................6

Rule 23(g)(4) .........................................................................................................6

**<u>Other Authority</u>**

Manual of Complex Litigations § 21.11 .........................................................6,21

**NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

24967

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Like many great legal doctrines in the United States, class actions originated in England's courts of chancery.  The chancery courts' strict joinder rules (everyone with an interest in the suit had to be a part of it) presented serious problems given the logistics of its time.  As this Court is aware, it is hard enough to coordinate people and lawsuits these days even with the perceived ease of email; coordination was infinitely more difficult during the days of quill pens.  Given this issue, it was decided that the chancery courts' joinder requirement was impractical and unjust.  Consequently, the courts created a new brand of suit, dubbed "Bills of Peace", where one representative sued, and the outcome bound those who were similarly situated.  Class actions were born: a special action that carries with it special responsibilities given the absence of those similarly situated.

According to the United States Supreme Court, the "principal purpose" of class actions is "the efficiency and economy of litigation".  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982) (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974)).  The Supreme Court also noted other justifications for class actions, such as, (1) protection of the interests of absentees, and (2) provision of a convenient and economical means of disposing of similar lawsuits.  *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 402-03 (1980).  The class action device can eliminate redundancy in the judicial system, streamline litigation, and in some cases, create significant institutional change.  Stated another way, class actions are a special procedural mechanism that carries with it a special responsibility for those charged with acting as counsel for the putative class.  In fact, class counsel have different responsibilities than in typical single plaintiff litigation.

David Lowery ("Lowery") is a well-recognized singer and songwriter, as well as a lecturer of music business at the University of Georgia, Terry College of

1

**NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

24967

Business. After realizing that his mechanical rights as a songwriter were being violated, Lowery sprang into action.  Lowery began figuring out what type of redress to seek, on whose behalf, and the appropriate representation.  He spent considerable time figuring out these issues.

It has been well publicized that Lowery's motive, in part, in bringing this action is to seek redress for the violation of the Copyright Act with respect to the unlicensed use of his works, and protecting the works of fellow songwriters in a manner that is creating institutional change.  In fact, Lowery routinely points out that the victims of Copyright Act violations are "starving artists" who put their "heart and soul" into these works and simply cannot afford to pursue their claims.  As such, at its core, this class action seeks to address Copyright Act violations that impact those who are not in a position to fight for their own rights.

Consistent with his motivations, Lowery began his search for legal counsel to advise him on his rights and to assist others similarly situated who have also been damaged.  During his diligent search for counsel, unbeknownst to the various law firms, Lowery sought referrals, spoke with industry participants, conducted law firm interviews, and had the assistance of his personal lawyer helping him select class counsel, among other things.  Ultimately, Lowery, along with his personal lawyer, selected Michelman & Robinson, LLP ("M&R") as counsel for himself and the putative class he is seeking to protect.[1]  It is worth noting that it was not until recently that it was disclosed that one of the law firms Lowery interviewed prior to M&R was Gradstein & Marzano, P.C. ("Gradstein"), the same counsel who filed an identical class action lawsuit against Spotify in this same court weeks after the filing of this

---

[1] Please note that M&R does not question the competency of Gradstein or its co-counsel.  Rather, given the dynamics of these cases, including the required efficiencies, among other things, M&R contends that it should be lead counsel.  That does not mean that when appropriate M&R will not call upon either Gradstein or its co-counsel, Susman Godfrey.  The opposite is true; when appropriate, M&R anticipates collaborating with both firms to ensure that the class, as a whole, is best protected and represented.

**NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

24967

1  lawsuit (*Ferrick, et al v. Spotify USA, Inc*., Case No. CV 16-0180-BRO (RAOx)).

2     As counsel for Lowery, M&R understands the special nature of class actions

3  and is committed to representing the putative class in an efficient manner without

4  sacrificing quality.  Given the vast amount of its class action and complex litigation

5  experience, M&R is perfectly situated to represent the putative class.  In fact, M&R

6  believes that given its special responsibility as class counsel, and if this Court agrees,

7  interim class counsel, it can utilize its unsurpassed experience with class actions as

8  defense counsel to streamline the issues, avoid unnecessary bantering with defense

9  counsel, and keep the case civil, professional and focused for all concerned.

10    In addition, M&R has the ability to handle this case with the same team of

11  lawyers in its "Class Action & Complex" department who have worked together for

12  almost two decades.  The efficiency of having the same team handling this matter is

13  in the best interests of the class and, ultimately, resolution.  Moreover, given the

14  number of M&R lawyers involved in the case, it already has handled this matter

15  without staffing issues.  Stated another way, M&R does not need to call upon the

16  assistance of other firms to "spread the risk" or obtain additional "manpower".

17    Finally, M&R is also uniquely situated in an untraditional way.  As part of

18  M&R's general philosophy to be supportive of its community and causes, it has opted

19  to extend this philosophy to this very case.  Without being requested or even

20  mentioned, M&R is contributing ten percent (10%) of any recovery of legal fees to a

21  charity that supports starving artists, subject to approval of the court.  As such, in the

22  event Plaintiffs are successful in resolving this litigation, artists will be the

23  beneficiary of M&R's hard work above and beyond just obtaining resolution.

24    It is for the reasons above, and as explained below, that M&R hereby moves

25  for an order consolidating the related cases and appointing it interim lead counsel,

26  and in the alternative, opposing the motion for appointment of interim class counsel

27  filed by Gradstein and Susman Godfrey in the related *Ferrick, et al v. Spotify USA,*

28

**NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO
CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF**

24967

*Inc.*, Case No. CV 16-0180-BRO (RAOx) matter.[2]

## II.    FACTS

David Lowery is a renowned singer songwriter, and has for years, been a lead singer for two bands, Cracker and Camper Van Beethoven[3].  Lowery is one of the "lucky ones" in that both bands have experienced worldwide success.  Given their success, it comes as no surprise that their catalog of songs has been featured on numerous non-interactive and interactive Internet music streaming sites, including Spotify.

Spotify is an interactive music streaming service that boasts a library of artists with 30+ million songs available for listening by its users.  Spotify was founded in Sweden and launched in the United States in 2011.  The United States now represents Spotify's biggest market. Its users have access to Spotify's entire music catalog, including (for premium users) digital download features that permit users to listen to playlists "offline".

Unfortunately, Spotify has reproduced and/or distributed Lowery's (and the putative class's) musical works through its streaming services without the required "mechanical" licenses, and in many cases, without paying songwriters any mechanical royalties at all.  Pursuant to the Copyright Act (17 U.S.C. § 115), Spotify's failure to obtain the required mechanical licenses prior to its use of such

---

[2] Plaintiffs' Motion for Appointment of Interim Class Counsel also seeks consolidation of the *Lowery* and *Ferrick* lawsuits.  M&R previously stipulated with counsel in the *Ferrick* action for consolidation of the both cases.  Hence, given that Plaintiffs in the *Lowery* action do not oppose consolidation of the matters, Plaintiffs do not seek to burden this Court with duplicative authority supporting a consolidation of the two cases.  The Motion for Consolidation briefed by plaintiffs' counsel in the *Ferrick* case sufficiently addresses the factual and legal commonalities supporting consolidation.

[3] Mr. Lowery is also a vocal advocate for the rights of songwriters.  He is a prolific writer and commentator on songwriter rights. His blog is widely followed in the industry (www.trichordist.com).

NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

24967

1  works expressly constitutes copyright infringement.  Hence, the filing of this class
2  action.

3  Thereafter, in December 2015, M&R brought this action against Spotify on
4  behalf of David Lowery and the putative class members alleging copyright
5  infringement ("Lowery action").  It must be noted that the *Lowery* action is the very
6  *first* class action of its kind in the United States[4].  It was only because of the intense
7  pre-litigation investigation that M&R was able to file this lawsuit.

8  On January 8, 2016, less than two weeks after M&R filed this class action
9  lawsuit against Spotify (which was highly publicized), the Gradstein firm filed a
10  substantively identical class action lawsuit against Spotify on behalf of songwriter
11  Melissa Ferrick ("*Ferrick* action").  The lawsuit was filed in this same District Court,
12  alleged the same copyright infringement claim, and also sought monetary damages
13  and injunctive relief.  Immediately upon filing the *Ferrick* action, Gradstein
14  contacted M&R to inform it that it would be seeking to consolidate the two cases.
15  *See* Declaration of Sanford Michelman ("Michelman Decl."), ¶ 3.

16  On February 17, 2016, five weeks after filing its lawsuit, Gradstein associated
17  in a separate law firm, Susman Godfrey ("Susman"), for "bench strength" to help it
18  with its case.  In addition, on April 4, 2016, Gradstein sought consolidation of the
19  two cases by filing a motion in the *Ferrick* case; something M&R agreed with and
20  suggested a stipulation to achieve the same result in a more efficient manner.
21  Michelman Decl., ¶ 3.

22  Specifically, M&R is a single firm that has dedicated attorneys to this case
23  who have worked together for years on dozens of high-stakes class action lawsuits.
24  Moreover, M&R already possesses the internal bench strength and in-house expertise
25  on the class action and federal copyright law at issue in this lawsuit.  With multiple

26
27
28

---

[4] Although music copyright infringement lawsuits have been filed previously, *no prior class actions have addressed the willful infringement of mechanical copyrights under the Copyright Act by an interactive streaming service*.  Given the novel aspects of this lawsuit, M&R's work to develop this action has been substantial.

**NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1   offices in Los Angeles, Orange County, San Francisco, and New York, M&R also
2   possesses the infrastructure and know-how to handle case-related activities regardless
3   of where they occur.  Stated another way, M&R will efficiently and effectively serve
4   the putative class.

5     For this reason, and as more fully described below, M&R therefore seeks
6   consolidation and appointment as interim class counsel.

7   **III.**  **LEGAL ARGUMENT**

8     **A.**   **The Appointment of Michelman & Robinson, LLP As Interim Class**
9       **Counsel Protects The Interests of The Putative Class.**

10     **1.**   **The Legal Standard for Appointing Interim Class Counsel.**

11    Federal Rule of Civil Procedure 23(g)(3), states that a court has discretion to
12  designate class counsel to represent the interests of the putative class.  In fact, when
13  two or more lawsuits face the possibility of consolidation, "designation of interim
14  counsel clarifies responsibility for protecting the interests of the class during
15  precertification activities, such as making and responding to motions, conducting any
16  necessary discovery, moving for class certification and negotiating settlement."
17  *Michelle v. Arctic Zero, Inc.*, No. 12CV2063-GPC NLS, 2013 WL 791145, at *2
18  (S.D. Cal. Mar. 1, 2013) (citing Manual of Complex Litigation § 21.11).   Interim
19  class counsel is generally appointed where "overlapping, duplicative, or competing
20  class suits are pending before a court, so that appointment of interim counsel is
21  necessary to protect the interests of class members."  *White v. TransUnion, LLC*, 239
22  F.R.D. 681, 683 (C.D. Cal. 2006).   Consequently, "[i]f more than one adequate
23  applicant seeks appointment, the court must appoint the applicant best able to
24  represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

25    While neither Rule 23(g), nor the Advisory Committee Notes, explicitly
26  delineate those factors to consider in selecting *interim* class counsel, courts generally
27  apply the same factors considered in connection with selecting class counsel.  *See*
28  *Parkinson v. Hyundai Motor Am.*, No. CV06-2553AHS (MLGX), 2006 WL

**NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO
CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF**

24967

2289801, at *2 (C.D. Cal. Aug. 7, 2006) (stating "Rule 23(g) provides criteria to consider when appointing class counsel, without distinguishing interim counsel. Presumably, the same factors apply, however."). Specifically, the factors that courts consider in designating interim class counsel include the following:

(1)     The work counsel has done in identifying or investigating potential claims in the action before filing the lawsuit;

(2)     Counsel's experience in handling class actions and other complex litigation;

(3)     Counsel's knowledge of the applicable law; and

(4)     The resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

In addition, the court may "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Respectfully, upon consideration of these factors, M&R submits that it should serve as interim class counsel and is best able to represent the interests of the putative class. *See supra* note 1.

a)     **M&R Has Undertaken Substantial Pre and Post Complaint Investigation of the Issues in this Litigation.**

"[T]he work done by counsel in identifying and investigating potential claims in this action . . . weighs in favor of their appointment as interim lead counsel." *See, e.g.*, *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008). Importantly, where multiple counsel filing two identical class action lawsuits seek appointment of interim class counsel, appointment of the ***first-filed*** counsel is appropriate where "a simple comparison of the original complaint . . . with the [second-filed complaint] reveals that they are almost identical." *Carlin v. DairyAmerica, Inc.*, 2009 WL 1518058, at *2 (E.D. Cal. May 29, 2009); *see also In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. at 186 (where a firm has "filed the first complaint[] in [the] case, and the subsequent complaints filed . . . are

7

NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

24967

1    substantially similar to those initial filings", it provides evidence of the firm's
2    "substantial history of investigating the potential claims in this action.").[5]

3        While the Ninth Circuit has not addressed the weight that courts should afford
4    to first-filed complaints when appointing interim class counsel, the Court has inherent
5    authority to "consider any other matter pertinent to counsel's ability to fairly and
6    adequately represent the interests of the class."   Fed. R. Civ. P. 23(g)(1)(B).
7    Therefore, a number of courts consider the counsel that files the first complaint to be
8    "a relevant factor when the factors for class counsel do not tilt heavily in either
9    direction and there is a need for an objective tie-breaker."  *Michelle*, 2013 WL
10   791145, at *2 n. 3; *see also Steele v. United States,* No. CV 14-1523, 2015 WL
11   4121607, at *4 n. 2 (D.D.C. June 30, 2015) (since both law firms were "more than
12   qualified to handle this action, it would be imminently reasonable to select [counsel]
13   on the basis that their complaint was ***filed first***.") (emphasis supplied); *Richey v. Ells,*
14   No. 12-CV-02635-WJM-MEH, 2013 WL 179234, at *2 (D. Colo. Jan. 17, 2013)
15   (since all firms were more than qualified to handle the action, court appointed
16   counsel who ***first filed*** the case) (emphasis supplied); *Moradi v. Adelson*, No. 11-CV-
17   00490-GMN-RJJ, 2011 WL 5025155, at *3 (D. Nev. Oct. 20, 2011) (since plaintiffs
18   "were the ***first to file*** suit it would be appropriate to assign [their counsel] as lead
19   counsel.") (emphasis supplied).

20       Here, it is agreed that M&R was the first to file class action litigation against
21   Spotify for copyright infringement *after* spending months investigating and
22   developing the novel claims asserted in this litigation.  M&R's investigation into the
23   legal and factual underpinnings at issue has likewise continued (indeed, intensified)

24   _____

25   [5] Additionally, courts often appoint as interim or lead counsel the firm that *filed first*.
     *See, e.g., Richey v. Ells,* No. 12-CV-02635-WJM-MEH, 2013 WL 179234, at *2 (D.
26   Colo. Jan. 17, 2013) ("Plaintiff Richey was the *first to file* his case and, therefore, the
     Court appoints his counsel as Lead Counsel for the consolidated action."); *Steele v.*
27   *United States*, No. CV 14-1523, 2015 WL 4121607, at *4 n. 2 (D.D.C. June 30,
     2015) ("[I]t would be imminently reasonable to select the Motley Rice Group on the
28   basis that their complaint was *filed first*."); *Moradi v. Adelson*, No. 11-CV-00490-
     GMN-RJJ, 2011 WL 5025155, at *3 (D. Nev. Oct. 20, 2011).

**NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO
CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF**

24967

since the filing of this lawsuit in an effort to genuinely and thoroughly understand the interests of the putative class in shaping the allegations of the complaint, and more importantly, identifying the actual industry-related problems associated with Spotify's wrongdoing that must be addressed and solved.  As established in case law, the court will also look to which firm has "shown they have invested more time and resources" into the action, and will essentially engage in a direct comparison of the tasks the relative firms have undertaken. *Michelle,* 2013 WL 791145, at *2-3.

Among other numerous and extensive investigative efforts, M&R has undertaken the following (non-exhaustive) work:

- Engaging in a comprehensive analysis of the relevant provisions of the Copyright Act, including ordering and reviewing thousands of pages of legislative history and advisory committee notes;

- Engaging in an exhaustive analysis for proceeding on a class basis under Federal Rule of Civil Procedure 23, versus other potential procedural means;

- Initiating deep research into Spotify's (and/or its mechanical rights administrator, Harry Fox Agency's) licensing practices as it relates to compulsory licensing requirements under 17 U.S.C. section 115 of the Copyright Act;

- Undertaking extensive research into the history of licensing within the context of interactive streaming services, including evaluating and summarizing Copyright Office Section Reports and circulars specific to the subject of interactive streaming (such as Spotify's platform);

- Researching and investigating the evolution of Spotify's digital content delivery system technology (*i.e.*, migrating from a peer-to-peer network platform, to a server datacenter platform, to its recent decision to utilize cloud-based systems);

- Engaging in pre-litigation communications directly with Spotify in an

9

NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO
CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF

24967

effort to identify and implement solutions to the wrongful and unlicensed use of the putative class's musical works;

- Researching, locating, and initiating communications with *numerous* songwriters and songwriter societies and associations (both U.S.-based and abroad) to gain industry insight and perspective on putative class members' interests in the context of licensing and royalties *vis-à-vis* interactive digital streaming;

- Creating a protocol and system to conduct interviews of songwriters and publishers who have been contacting M&R on a frequent basis;

- Traveling to other cities to interview and conduct due diligence regarding the issues in this case with high-level industry executives, and in fact, other interactive digital streaming services (including a CEO of a competitor); and

- Researching, locating, and initiating communications with numerous publishing companies to likewise gain industry insight and perspective from those publishing company putative class members.

*See* Declaration of David Lee ("Lee Decl."), ¶¶ 3-6.

Based on the above, M&R's class action complaint – *the very first of its kind in the United States* – articulates and prays for injunctive relief that is specifically tailored to address the interests and needs of the putative class, *i.e.*, an injunction requiring "Spotify to pay for the services of a third party auditor to identify the owners of Works reproduced and/or distributed by Spotify despite Spotify's failure to first obtain a mechanical license prior to reproducing and/or distributing the Works, and further requiring Spotify to remove all such Works from its services until it obtains proper licenses for them."  *See* Lowery Amended Class Action Complaint ("Amended Compl."), at 18.  This form of injunctive relief resulted directly from M&R's pre-litigation efforts to delve into the actualized concerns of putative class members arising from Spotify's wrongful conduct – concerns above and beyond the

NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

24967

mere recovery of monetary damages.  In addition, based on the pre-litigation efforts, M&R was able to obtain evidence, witnesses, and other material critical to protecting the class that cannot be described herein.

Consistent with the above, since the filing of the lawsuit, M&R has consulted with numerous expert consultants and industry insiders (including publishers, songwriters, and academicians) for the purposes of developing analysis, strategies and methodologies for: (1) targeting the datasets maintained by Spotify necessary to identify the hundreds of thousands (and potentially millions) of infringed musical works; (2) isolating the identity of the owners of those infringed musical works; and (3) developing a centralized and transparent database for collecting and organizing accurate and reliable information concerning the rights-holders of musical works (a key concern and interest of Plaintiffs and other similarly situated parties).  Lee Decl., ¶ 7.

In addition, M&R has consulted with prospective experts about calculating the actual unpaid royalties owed by Spotify under the Copyright Act.  Moreover, in an effort to jumpstart discovery efforts early in the case, M&R propounded extensive class certification-related written discovery requests on Defendant Spotify shortly after the filing of Plaintiffs' complaint (on January 22, 2016).  Lee Decl., ¶ 8.  The propounding of this discovery was only possible based on the extensive pre-litigation investigation by M&R.

M&R's commitment to protect the putative class ranges from before the filing of the lawsuit to the present day, including responding to Spotify's present attempts to "settle around" the class action lawsuit.  Specifically, within three months of M&R filing this action, news of a "settlement" in principle between Spotify and music publisher members of the National Music Publishing Association ("NMPA") was circulated within music industry publications – a deal apparently "brokered" by the NMPA itself (the former owner of Harry Fox Agency, the mechanical rights administrator hired by Spotify to obtain mechanical licensing from the putative

class).   The "settlement" conspicuously attempts to address the same wrongdoings alleged against Spotify in this lawsuit ("Spotify Settlement").   *See* Lee Decl., ¶ 9 and Exhibit A.   Pursuant to the purported terms of that agreement, potential putative class members (specifically NMPA's publisher members) can "opt in" to the Spotify Settlement to claim their respective share of unpaid royalties from a settlement pool (consisting of unpaid royalties) funded by Spotify[6].

As reported, publishers opting in are required to release all claims they had against Spotify relating to its unlicensed use of their musical works and nonpayment of royalties for that use alleged in these lawsuits.   *Id.*   Put another way, NMPA publishers opting into the Spotify Settlement are allegedly foreclosed from participating in this class action[7].   *Id.*

M&R immediately transmitted written demands to both Spotify and the NMPA requesting copies of the purported Spotify Settlement and related communications/notifications to NMPA's publisher members (*i.e.*, potential putative class members).   Declaration of Mona Z. Hanna ("Hanna Decl."), ¶ 3 and Exhibits A, B.   M&R demanded inspection of such materials to ensure that: (1) potential putative class members were not being misled about the Spotify Settlement terms and (2) that putative class members were informed about this class action.   Hanna Decl., ¶ 4.   Spotify and the NMPA both transmitted correspondence reflecting their respective unwillingness to disclose the materials claiming them to be "confidential" and irrelevant to this action.   Hanna Decl., ¶¶ 5-6 and Exhibits C, D.

In response, pursuant to Rule 23, M&R has filed a Motion for Corrective Action seeking the disclosure of such information to ensure that all communications

---

[6] It is important to note that the agreement cannot really be a "settlement agreement" since the NMPA and Spotify are not parties to a lawsuit.  Rather, this is merely a means to "pick off" class members.

[7]  It is contended that the NMPA releases are void, as a matter of public policy, among other things.  Those issues are not relevant to this motion.  It does highlight M&R's substantial commitment to protect the class.

**NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

to NMPA members (and potential putative class members) contain accurate and objectively balanced information about the Spotify Settlement so that putative class members can make informed decisions about whether to opt in to that settlement in lieu of participating in this lawsuit.  *See* Hanna Decl., ¶ 7.

The above activities demonstrate M&R's intensive investigation into the copyright claim alleged in this class action – the *first* class action of its kind in the United States.  More significantly, M&R's work evidences its commitment to protect the putative class members not only through its intensive communications with experts, academicians, industry insiders, publishers, and songwriters (so as to best understand the actual concerns of putative class members), but as reflected in (1) the specific allegations and injunctive relief incorporated into Plaintiffs' complaint, and (2) M&R's motion practice to ensure that all communications and notifications made to the NMPA members (*i.e.*, potential putative class members) about the Spotify Settlement are transparent, fair and balanced.

> **b)    M&R Has Substantial Experience Handling Class Action Lawsuits and the Trial Team Possesses Knowledge of the Applicable Laws at Issue.**

There is no question that M&R is highly capable of handling this class action lawsuit.  M&R has received numerous awards for its litigation practice and has been specially recognized by a number of preeminent legal publications.  By way of mere example (and not exhaustive), the recent honors and recognitions include:

- Ranked as a "Tier One" firm for commercial litigation in *U.S. News & World Report/Best Lawyers* publication, titled "Best Law Firms in America for 2016";
- Included in *Vault's* "Top 150 Under 150" national law firm publication;
- Included in the *2015 Legal 500 USA Guide* for commercial and business litigation;
- Listed among the "Top Ranked Law Firms in California" by Martindale-

13

NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

24967

Hubbell; and

- Named to *Los Angeles Business Journal's* list of "Top 100 Southern California Law Firms."  Michelman Decl., ¶¶ 4-5.

In addition, and specifically relevant to these lawsuits, *Vault* considers M&R "a major contender for high-profile work across a variety of practice areas" and "has become well known for its complex litigation experience *and class action prowess*." Michelman Decl., ¶ 6 and Exhibit A (emphasis supplied).

M&R's national recognition is due in part to the innovative work it has performed on literally countless *high-stakes state and federal class actions* and complex matters over the past years, across a broad spectrum of practice areas.  *See* Michelman Decl., ¶ 7.  In defense of class actions, M&R has represented over 50 cases that all resolved positively for the clients.  Michelman Decl., ¶ 8 and Exhibit B. These cases were handled efficiently and without issue for the parties, counsel or court; some were a matter of first impression.

In addition to the firm's broad litigation experience, the lead trial attorneys on this case, Sanford Michelman and Mona Hanna, have each been individually recognized as leading practitioners in the areas of complex and class action litigation. Sanford Michelman is the co-founder and Chairman of Michelman & Robinson, and his numerous industry recognitions include, but are not limited to:

- Named in the *Best Lawyers in America USA Guide* publication;
- Named as one of the "Top 100 Attorneys in Southern California" by *Super Lawyers Magazine*;
- Named a *Super Lawyer* since inception of the list;
- Named in the *San Fernando Valley Business Journal* as one of the "Top 25 Lawyers" and "Top Forty Under 40";
- Early in his career, *The Daily Journal* named Mr. Michelman as one of the "Top 20 under 40"; and
- Named "Who's Who in Law."  Michelman Decl., ¶ 9.

**NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

In addition to the foregoing, Mr. Michelman was selected to serve on the *Super Lawyers*' Blue Ribbon Panel and has appeared in the Southern California *Super Lawyers* list every year since 2003.  *Id.*

Also, consistent with M&R's philosophy of "giving back" to the community, and hence the donation of 10% of any fee award, Mr. Michelman has been honored by the following organizations:

- The California State Bar for his pro bono services;
- Recipient of the Discovery Award by the Zimmer Children's Museum; and
- Various trade associations for his participation and support of those organizations.  Michelman Decl., ¶ 10.

Mr. Michelman has successfully represented both plaintiffs and defendants, and predominantly handles high-profile class actions. He recently obtained a complete dismissal for a popular media company in a multi-district lawsuit where investors alleged more than $2 billion in damages.  *See* Michelman Decl., ¶ 11 (*Karen J. Reif et al. v. Rightscorp, Inc. et al.*, Case No. CV 14-09032 (C.D. Cal. 2014)).  Mr. Michelman also defeated certification of a high-profile consumer class action lawsuit seeking more than $600 million in damages from a large insurance company.  *Id.* (*Tanya Newton et al. v. Coast National Insurance Company et al.*, Case No. BC-361487 (Cal. Sup. Ct. 2006)).  In addition, he obtained dismissal of a $3 billion class action alleging statutory violations against his client.  *Id.* (*Justin Lopez et al. v. Freeway Insurance Services, Inc.*, Case No. BC-475077 (Cal. Sup. Ct. 2011)).

Mona Hanna is the Department Chair of Firm Wide Litigation and also a senior member of M&R's "Class Actions and Complex" litigation group.  Hanna Decl., ¶ 8.  In consecutive years, she has been included on the *Best Lawyers in America USA Guide* publication and has been selected as a Southern California *Super Lawyer* every year for the last decade.  *Id.*  In addition, Ms. Hanna has been

15

NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

24967

recognized as following (not all inclusive):

- Selected as one of the "Top Women Lawyers" in California by the *Daily Journal*;
- Named one of the "Top Women Attorneys in Southern California" by *Super Lawyers Magazine*;
- Named "Top 50 Attorneys in Orange County" by *Super Lawyers Magazine*; and
- Successful trial attorney with a history of trial verdicts in favor of her clients, including one that was selected among *Daily Journal*'s Top Verdicts of 2014.  Hanna Decl., ¶¶ 8-9.

Ms. Hanna has also been inducted into the Trial Lawyer Honorary Society and the Litigation Counsel of America, and was nominated multiple times for the "Top Women in Business" award by the *Orange County Business Journal*.  Hanna Decl., ¶ 9.

Ms. Hanna, like Mr. Michelman, has handled numerous complex federal litigation matters and class action lawsuits.  For example, Ms. Hanna has reduced a $42 million class action judgment to $1.2 million in a decision that was ultimately upheld by the Ninth Circuit on appeal.  *See* Hanna Decl., ¶ 10 (*Casey Parks et al. v. Eastwood Insurance Services, Inc., et al.*, Case No. CV 02-0507-GLT (MLGx) (C.D. Cal. 2002)).

In addition to its sophisticated and well established litigation practice, M&R has a well-established intellectual property and copyright practice, and has regularly handled matters involving copyrights and other digital rights in the music and entertainment industry.  For example, M&R recently represented a digital rights enforcement company that used proprietary technology to seek out violations of the Copyright Act on behalf of its music publisher and video distribution clients Bertelsmann Music Group ("BMG") and Warner Bros., among others.  *See* Michelman Decl., ¶ 12.  Moreover, M&R handles all stages of trademark and

16

NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

24967

copyright prosecution for numerous prominent musicians and singers in the U.S. Patent and Trademark Office and U.S. Copyright Office. *Id.*

David Lee, part of the M&R team in this matter, has been included in the *Super Lawyers* publication each of the past five years. Lee Decl., ¶ 10. He possesses years of experience practicing law in the field of intellectual property and has handled cases involving a range of complex intellectual property issues. *See* Lee Decl., ¶ 11. As a few examples, he successfully represented plaintiff Cards Against Humanity, LLC, a wildly popular game manufacturer, in a large-scale copyright infringement action against local and China-based corporate defendants, in which he secured the maximum statutory damages allowable under the law for willful infringement of the Copyright Act. *Id.* He has also represented the NFL Properties, LLP and a local National Football League franchise in multiple trademark infringement and false designation of origin matters against defendants arising from unlicensed uses of intellectual property. *Id.* Mr. Lee also successfully represented songwriters in an action against their record label for breach of contract concerning unpaid royalties. *Id.* In addition to the above, Mr. Lee has handled numerous other copyright matters on behalf of plaintiffs and defendants. Lee Decl., ¶ 12. Further, he has handled a variety of intellectual property matters involving sophisticated technology issues, and therefore, has familiarity with high-technology litigation. *Id.*

Indeed, this current lawsuit is the *second* such copyright infringement class action currently being handled by M&R on behalf of struggling songwriters concerning the unlicensed use of musical works by an interactive music streaming company. M&R is currently also representing the same plaintiffs in *Lowery, et al. v. Rhapsody International, Inc.* filed in the United States District Court, Northern District of California (Case No. 4:16-CV-01135). Lee Decl., ¶ 13. Like Spotify, Plaintiffs allege that Rhapsody has willfully infringed the copyrights of Plaintiffs' and thousands of other putative class member songwriters by streaming those works without mechanical licenses. *Id.* Accordingly, given the close similarity of the two

1  cases, M&R can leverage its deep knowledge of the law and facts common to both

2  cases to efficiently litigate the substantive issues in a manner designed to best protect

3  the interests of the common classes.

4      M&R's demonstrated experience in class action and intellectual matters,

5  combined with the above-referenced skills and expertise of those attorneys acting as

6  lead counsel in this class action, establishes the firm's capabilities, requisite

7  knowledge, and experience to handle the complexities and scale of the instant lawsuit

8  in a manner that serves and protects the interests of the putative class.

9         c)    **M&R Has Substantial Resources to Commit To**

10              **Representing The Putative Class.**

11     M&R possesses the resources necessary to fully protect the interests of the

12  putative class.  As recognized by courts, the cohesiveness and communication flow of

13  the attorneys responsible for the case is indicative of the manner in which the

14  resources available to a case can be successfully deployed.  As such, "a single firm

15  will usually provide more effective and efficient representation than a group of two

16  or more firms" because it is "already organized with internal levels of communication

17  and management structure."  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-

18  5944 SC, 2008 WL 2024957, at *2 (N.D. Cal. May 9, 2008).   In contrast, "[a] group

19  of firms, on the other hand, must create these structures," which "will tend to increase

20  the risk that items may fall through the cracks" and thus, "the court should be alert to

21  the risk of overstaffing" and the possibility of "an ungainly counsel structure."  *Id.*

22  (emphasis supplied).

23     Here, M&R – as a single firm representing Plaintiffs and other similarly

24  situated putative class members – has the internal structure and management already

25  in place to implement and execute streamlined and efficient litigation strategies.

26  Michelman Decl., ¶ 13.  In fact, the very same systems and lead lawyers utilized in

27  this case have been in place for well over a decade.  *Id.*  Given that the M&R team is

28  comprised of the Chairman of the firm (Sanford Michelman), the Department Chair

**NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO
CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF**

24967

of Litigation and senior member of the Complex and Class Action Group (Mona Hanna), and the Practice Leader of the IP Litigation Group (David Lee), the trial team has the management-level authority to dedicate firm resources and finances to this lawsuit as necessary. *Id.* The efficiency of the systems will benefit all concerned; including the Court.

With plenty of attorneys among its ranks, M&R has the capability to handle this matter, as it has been for months. In fact, this case has the benefit of the Chairman, Department Chair and Practice Group leader working directly on the case to control staffing to ensure efficient representation as needs dictate. *See id.* M&R further has offices located in Los Angeles, San Francisco, and New York to handle case activities whether dealing with the Court (in Los Angeles), Defendant (in New York), or party witnesses (located in Los Angeles and San Francisco). *See* Michelman Decl., ¶ 6. M&R appreciates the responsibility of class counsel and is committed to ensuring it lives up to it.

### d) <u>Other Pertinent Matters to Consider.</u>

The Court may "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). M&R submits the following are matters worthy of consideration:

Plaintiffs David Lowery, Victor Krummenacher, Greg Lisher and David Faragher specifically selected M&R to represent their (and other similarly situated putative class members') interests in connection with Spotify, after conducting due diligence of the firms they considered.

It is indisputable that Lowery has been the leading advocate in the music industry calling for interactive streaming sites (notably Spotify) to abide by copyright laws in connection with mechanical licensing and royalty payments. *See* Lee Decl., ¶ 14 and Exhibits B, C. Lowery has advocated for independent songwriters for more than two decades. *Id.* In addition to being featured in national media publications like the *New York Times* on his music advocacy, Lowery has also authored hundreds

19

NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

24967

of articles relating to the specific copyright issues squarely addressed in this lawsuit. *See* Lee Decl., ¶ 15 and Exhibit D.  In fact, newspapers such as the *Boston Globe* refer to Lowery as "a leading critic of streaming [music] companies."  Lee Decl., ¶ 16 and Exhibit E.  In addition, the Department of State and the United States Chamber of Commerce hand-selected Lowery to lead a ten-day Intellectual Property and Artists' Rights speaking tour of China in 2013.  Lee Decl., ¶ 17 and Exhibit F.  He has been invited by a number of federal agencies, including the United States Department of Justice ("DOJ"), the United States Copyright Office, and the Federal Communications Commission ("FCC"), to comment on the intersection between music and copyright issues, including at an event co-sponsored by the United States Copyright Office on April 18, 2016, in the Library of Congress.  *See* Lee Decl., ¶¶ 18-19 and Exhibits G-J.  He has further testified in Congress before the Judiciary Committee on Intellectual Property and the Internet.  Lee Decl., ¶ 20 and Exhibit K. Lowery is knowledgeable, respected, and diligent when it comes to protecting artists' rights.

After considering other potential firms, Lowery specifically chose M&R to lead the effort to protect the oft-forgotten mechanical rights of songwriters and composers from willful infringement.  Lee Decl., ¶ 21.  As a leading advocate, Lowery's experience and general understanding of and contacts within the music industry has afforded M&R unique access to contacts and information sources within the industry, which in turn, has resulted in M&R expending significant effort to investigate and probe the specific concerns of putative class members, including individual songwriters, music publishers, songwriter societies, and songwriter advocates.  Lee Decl., ¶ 22.

In addition, given Lowery's deep immersion into the advocacy waters, his reach and contact with respect to other similarly situated individuals and publishers is undeniable.  M&R's near daily contact with Lowery has resulted in obtaining information concerning the music community's responses to externalities, including

for example, songwriter and publisher reactions to the Spotify Settlement.  Lee Decl., ¶ 23.  Such information permits M&R to immediately understand the concerns and interests of those similarly situated to Plaintiffs in this action, and to better protect those interests.  Together, Lowery and M&R are best suited to represent the absentee plaintiffs.

In addition, M&R's commitment to advance the interests of the putative class is exhibited by its pledge to donate ten percent (10%) of any fees earned in connection with its representation in the matter.  *See* Michelman Decl., ¶ 15.  Those proceeds will be donated to a charity committed to protecting and advancing the rights of songwriters; a mission shared by M&R.  *Id.*  As such, M&R and its clients are aligned.

For these reasons, Plaintiffs respectfully submit that M&R should be appointed interim class counsel in the class action against Spotify.

**B.**     **The Court Should Specify M&R's Responsibility as Interim Lead Class Counsel.**

"Designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement."  *Michelle,* 2013 WL 791145, at *2 (citing Manual of Complex Litigation § 21.11).  Accordingly, to the extent the Court selects M&R as interim lead class counsel, the following duties and responsibilities would appropriately be undertaken: (1) authority to speak for the putative class in matters regarding pretrial procedure and settlement negotiations; (2) responsibility for filing a Consolidated Class Action Complaint; (3) authority to conduct discovery on behalf of the putative class; (4) authority to make and respond to motions on behalf of the putative class; and (5) authority to move for class certification.  Such duties and responsibilities will avoid unnecessary duplication in these proceedings prior to the certification of a class and will promote the "fair and efficient conduct of the action."

NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

24967

1    *See* Fed. R. Civ. P. 23(d) Advisory Committee's Notes (1966 Amendment).

2    **IV.    CONCLUSION**

3            Based on the foregoing and the additional supporting evidence submitted

4    herewith, Plaintiffs request that the Court consolidate the related actions and appoint

5    M&R as interim lead class counsel.

6

7                                    **MICHELMAN & ROBINSON LLP**

     Dated:  April 18, 2016

8

9                                    By _____

10                                      Sanford L. Michelman
                                        Mona Z. Hanna
11                                      David C. Lee
                                        Ilse C. Scott
12                                      Melanie Natasha Howard
                                        *Attorneys for Plaintiff and Proposed Class*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

24967

**CERTIFICATE OF SERVICE**

I certify that on April 18, 2016, I caused a copy of the foregoing to be filed electronically and that the document is available for viewing and downloading from the ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

By: _____
        Mariam Tarzi

---

**NOTICE OF CROSS-MOTION AND CROSS-MOTION OF PLAINTIFFS LOWERY, ET AL. TO CONSOLIDATE RELATED CASES AND APPOINT INTERIM LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

24967